# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

MARTENS CARS OF WASHINGTON, INC., LANDERS AUTO GROUP NO. 1, INC. D/B/A LANDERS TOYOTA, HAMMETT MOTOR COMPANY, INC., SUPERSTORE AUTOMOTIVE, INC., LEE PONTIAC-OLDSMOBILE-GMC TRUCK, INC., V.I.P. MOTOR CARS LTD., DESERT EUROPEAN MOTORCARS, LTD., DALE MARTENS NISSAN SUBARU, INC., GREEN TEAM OF CLAY CENTER INC., MCGRATH AUTOMOTIVE GROUP, INC., TABLE ROCK AUTOMOTIVE, INC. D/B/A TODD ARCHER HYUNDAI, ARCHER-PERDUE, INC. D/B/A ARCHER-PERDUE SUZUKI, BONNEVILLE AND SON, INC., HOLZHAUER AUTO AND TRUCK SALES, INC., PITRE, INC. D/B/A PITRE BUICK GMC, PATSY LOU CHEVROLET, INC., JOHN GREENE CHRYSLER DODGE JEEP, LLC, SLT GROUP II, INC. D/B/A PLANET NISSAN SUBARU OF FLAGSTAFF, HERB HALLMAN CHEVROLET, INC. D/B/A CHAMPION CHEVROLET, CHARLES DAHER'S COMMONWEALTH MOTORS, INC. D/B/A COMMONWEALTH CHEVROLET, COMMONWEALTH KIA, COMMONWEALTH HONDA, COMMONWEALTH VOLKSWAGEN, INC. D/B/A COMMONWEALTH VOLKSWAGEN,  COMMONWEALTH NISSAN, INC. D/B/A COMMONWEALTH NISSAN, RAMEY MOTORS, INC., THORNHILL SUPERSTORE, INC. D/B/A THORNHILL GM SUPERSTORE, DAVE HEATHER CORPORATION D/B/A LAKELAND TOYOTA HONDA MAZDA SUBARU; CENTRAL SALT LAKE VALLEY GMC ENTERPRISES, LLC D/B/A SALT LAKE VALLEY BUICK GMC; CAPITOL CHEVROLET CADILLAC, INC.; CAPITOL

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No. _____

Hon. _____

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

JURY TRIAL DEMANDED

**Related to: 12-md-02311 and 2:13-cv-12483-MOB-MKM**

1

DEALERSHIPS, INC. D/B/A CAPITOL )
TOYOTA; BECK MOTORS, INC.; )
STRANGER INVESTMENTS D/B/A )
STEPHEN WADE TOYOTA; JOHN )
O'NEIL JOHNSON TOYOTA, LLC; )
HARTLEY BUICK GMC TRUCK, INC.; )
LEE OLDSMOBILE-CADILLAC, INC. )
D/B/A LEE HONDA; LEE AUTO MALLS- )
TOPSHAM, INC. D/B/A LEE TOYOTA OF )
TOPSHAM; LANDERS OF HAZELWOOD, )
LLC D/B/A LANDERS TOYOTA OF )
HAZELWOOD; CANNON CHEVROLET – )
OLDSMOBILE – CADILLAC – NISSAN, )
INC.; CANNON NISSAN OF JACKSON, )
LLC; HUDSON CHARLESTON )
ACQUISITION, LLC D/B/A HUDSON )
NISSAN; HUDSON GASTONIA )
ACQUISITION, LLC; HC ACQUISITION, )
LLC D/B/A TOYOTA OF BRISTOL, )
SHEARER AUTOMOTIVE ENTERPRISES )
III, INC, and APEX MOTOR )
CORPORATION on Behalf of themselves )
and all Others Similarly Situated, )
)
                  Plaintiffs, )
)
     vs. )
)
KOITO MANUFACTURING CO., LTD.; )
ICHIKOH INDUSTRIES, LTD.; STANLEY )
ELECTRIC CO., LTD.; and MITSUBA )
CORP., )
)
                  Defendants.

## **DEALERSHIP CLASS COMPLAINT**

Plaintiffs Martens Cars of Washington, Inc. ("Plaintiff Martens"); Landers Auto Group No.

1, Inc., d/b/a Landers Toyota ("Plaintiff Landers"); Hammett Motor Company, Inc. ("Plaintiff

Hammett"); Superstore Automotive, Inc. ("Plaintiff Superstore"); Lee Pontiac-Oldsmobile-GMC

Truck, Inc. ("Plaintiff Lee"); V.I.P. Motor Cars Ltd. ("Plaintiff V.I.P."); Desert European

Motorcars, Ltd.  ("Plaintiff Desert"); Dale Martens Nissan Subaru, Inc. ("Plaintiff Dale Martens"); Green Team of Clay Center Inc. ("Plaintiff Green Team"); McGrath Automotive Group, Inc. ("Plaintiff McGrath"), Table Rock Automotive, Inc., d/b/a Todd Archer Hyundai ("Plaintiff Table Rock"); Archer-Perdue, Inc., d/b/a/ Archer-Perdue Suzuki ("Plaintiff Archer-Perdue"); Bonneville and Son, Inc. ("Plaintiff Bonneville"); Holzhauer Auto and Truck Sales, Inc. ("Plaintiff Holzhauer"); Pitre, Inc., d/b/a/ Pitre Buick GMC ("Plaintiff Pitre"); Patsy Lou Chevrolet, Inc. ("Plaintiff Patsy Lou");  John Greene Chrysler Dodge Jeep, LLC ("Plaintiff John Greene"); SLT Group II, Inc., d/b/a Planet Nissan Subaru of Flagstaff ("Plaintiff Planet Nissan"); Herb Hallman Chevrolet, Inc., d/b/a/ Champion Chevrolet ("Plaintiff Champion"); Charles Daher's Commonwealth Motors, Inc., d/b/a Commonwealth Chevrolet, Commonwealth Kia, Commonwealth Honda ("Plaintiff Commonwealth Motors"); Commonwealth Volkswagen, Inc., d/b/a Commonwealth Volkswagen ("Plaintiff Commonwealth Volkswagen"); Commonwealth Nissan, Inc., d/b/a Commonwealth Nissan ("Plaintiff Commonwealth Nissan"); Ramey Motors, Inc. ("Plaintiff Ramey"); Thornhill Superstore, Inc.,  d/b/a Thornhill GM Superstore ("Plaintiff Thornhill"); Dave Heather Corporation, d/b/a Lakeland Toyota Honda Mazda Subaru ("Plaintiff Lakeland"); Central Salt Lake Valley GMC Enterprises, LLC, d/b/a Salt Lake Valley Buick GMC ("Plaintiff Salt Lake Valley"); Capitol Chevrolet Cadillac, Inc. ("Plaintiff Capitol Chevrolet"); Capitol Dealerships, Inc., d/b/a Capitol Toyota ("Plaintiff Capitol Toyota"); Beck Motors, Inc. ("Plaintiff Beck"); Stranger Investments d/b/a Stephen Wade Toyota ("Plaintiff Wade"); John O'Neil Johnson Toyota, LLC ("Plaintiff Johnson"); Hartley Buick GMC Truck, Inc. ("Plaintiff Hartley"); Lee Oldsmobile-Cadillac, Inc. d/b/a Lee Honda ("Plaintiff Lee Honda"); Lee Auto Malls-Topsham, Inc. d/b/a Lee Toyota of Topsham ("Plaintiff Topsham"); Landers of Hazelwood, LLC d/b/a Landers Toyota of Hazelwood ("Plaintiff Hazelwood"); Cannon Chevrolet –

3

Oldsmobile – Cadillac – Nissan, Inc.  ("Plaintiff Cannon"); Cannon Nissan of Jackson, LLC ("Plaintiff Cannon Nissan"); Hudson Charleston Acquisition, LLC d/b/a Hudson Nissan ("Plaintiff Hudson Nissan"); Hudson Gastonia Acquisition, LLC ("Plaintiff Gastonia Nissan"); HC Acquisition, LLC d/b/a Toyota of Bristol ("Plaintiff Bristol Toyota"); Shearer Automotive Enterprises III, Inc. ("Plaintiff Shearer") and Apex Motor Corporation ("Plaintiff Apex") (collectively "Plaintiffs"), file this Class Complaint on behalf of themselves and all others similarly situated (the "Classes" as defined below).

Plaintiffs bring this class action for damages, injunctive relief, and other relief pursuant to federal antitrust laws and state antitrust, unfair competition, and consumer protection laws, demand a trial by jury, and allege as follows:

## NATURE OF ACTION

1.     Plaintiffs bring this lawsuit as a proposed class action against the Defendants (defined below), manufacturers, and suppliers of Automotive Lamps (defined below) globally and in the United States for engaging in a lengthy conspiracy to suppress and eliminate competition in the automotive parts industry by agreeing to rig bids for, and to fix, stabilize, and maintain the prices of these products, which were sold to automobile manufacturers in the United States and elsewhere.  The Defendants' conspiracy successfully targeted the United States automotive industry, raising prices for car manufacturers, and car and truck dealers. "Automotive Lamps," as used herein, include headlamps and rear combination lamps.  A headlamp is an Automotive Lamp installed in the front of an automobile that consists of lights such as headlights, a clearance lamp, and turn signals.  A rear combination lamp is an Automotive Lamp installed in the rear of an automobile that consists of lights such as a backup lamp, stop lamp, tail lights, and turn signals.

2.     The "Class Period" refers to July 1, 2002, to the present.

4

3.      The Defendants manufacture, market, and sell Automotive Lamps throughout the United States and in other countries.

4.      Vehicles containing Automotive Lamps, as well as Automotive Lamps themselves, made by Defendants, are sold in every state of the United States and the District of Columbia.

5.      The Defendants and other co-conspirators (as yet unknown) agreed, combined, and conspired to rig bids for, and to fix, stabilize, and maintain the prices of Automotive Lamps. Competition authorities in Japan and possibly elsewhere, have been investigating a conspiracy in the market for Automotive Lamps since at least March 2012.  The Japanese Fair Trade Commission ("JFTC") has raided the offices of Defendants.  The U.S. Department of Justice's ("DOJ") Antitrust Division is currently conducting a broad criminal investigation into illegal price fixing and bid rigging in the automotive parts industry.  As part of its criminal investigation, the DOJ is seeking information about unlawful anticompetitive conduct in the market for a number of different but related automotive parts, and the Federal Bureau of Investigation ("FBI") has participated in raids, pursuant to search warrants, carried out in the offices of a number of major competitors in the automotive parts industry.  The automotive parts investigation is the largest criminal investigation the Antitrust Division has ever pursued, both in terms of its scope and the potential volume of commerce affected by the alleged illegal conduct. The ongoing cartel investigation of price-fixing and bid-rigging in the automotive parts industry has yielded more than $790 million in criminal fines, already surpassing the total amount in criminal fines obtained by the DOJ's Antitrust Division for all of last fiscal year.  The European Commission Competition Authority ("EC") has also conducted dawn raids at the European offices of several automotive parts manufacturers.

6.     On March 21, 2013, the JFTC announced that it had levied fines totaling $49.1 million, including a $36 million fine against Defendant Koito Manufacturing Co., Ltd. ("Koito") and a $13.1 million fine against Defendant Ichikoh Industries, Ltd. ("Ichikoh"), for violating antitrust laws by forming a cartel to fix prices for Automotive Lamps.   On March 21, 2013, the JFTC also announced the imposition of cease-and-desist orders against Defendants Koito and Ichikoh, requiring them to: (i) immediately pass resolutions that they would terminate any illegal conduct in the Automotive Lamps industry; (ii) contact any automobile maker that might have purchased their Automotive Lamps through collusive bidding processes; (iii) refrain from engaging in such illegal conduct in the future; and (iv) implement employee antitrust compliance programs.  According to the JFTC, fellow conspirator Stanley Electric Co., Ltd. ("Stanley") also violated antitrust laws, but did not receive a cease-and-desist order.

7.     As a direct result of the anti-competitive and unlawful conduct alleged herein, Plaintiffs and the Class paid artificially inflated prices for Automotive Lamps or for vehicles containing Automotive Lamps.  Plaintiffs and the members of the Classes have thereby suffered antitrust injury to their business or property.

**JURISDICTION AND VENUE**

8.     Plaintiffs bring this action under Section 16 of the Clayton Act (15 U.S.C. § 26) to secure equitable and injunctive relief against Defendants for violating Section 1 of the Sherman Act (15 U.S.C. § 1).  Plaintiffs also assert claims for actual and exemplary damages pursuant to state antitrust, unfair competition, and consumer protection laws, and seek to obtain restitution, recover damages, and secure other relief against Defendants for violation of those state laws. Plaintiffs and the Classes also seek attorneys' fees, costs, and other expenses under federal and state law.

9.     This Court has jurisdiction over the subject matter of this action pursuant to Section 16 of the Clayton Act (15 U.S.C. § 26), Section 1 of the Sherman Act (15 U.S.C. § 1), and Title 28, United States Code, Sections 1331 and 1337.  This Court has subject matter jurisdiction over the state law claims in this action, pursuant to 28 U.S.C. §§ 1332(d) and 1367, because this is a class action in which the matter or controversy exceeds the sum of $5,000,000, exclusive of interests and costs, and in which some members of the proposed Classes are citizens of different states than some Defendants.

10.     Venue is proper in this district pursuant to Section 12 of the Clayton Act (15 U.S.C. § 22), and 28 U.S.C. §§ 1391 (b), (c), and (d), because a substantial part of the events giving rise to Plaintiffs' claims occurred in this district, a substantial portion of the affected interstate trade and commerce discussed below has been carried out in this district, and one or more of the Defendants reside, are licensed to do business in, are doing business in, had agents in, or are found or transact business in this district.

11.     This Court has *in personam* jurisdiction over each of the Defendants because each Defendant, either directly or through the ownership and/or control of its United States subsidiaries, *inter alia:* (a) transacted business in the United States, including in this district; (b) directly or indirectly sold or marketed substantial quantities of Automotive Lamps throughout the United States that were specifically designed for vehicles that were intended to be sold in the United States, including in this district; (c) had substantial aggregate contacts with the United States as a whole, including in this district; (d) was through its own actions and through the actions of its co-conspirators, engaged in an illegal price-fixing conspiracy that was directed at, and had a direct, substantial, reasonably foreseeable and intended effect of causing injury to, the business or property of persons and entities residing in, located in, or doing business throughout

7

the United States; and/or (e) engaged in actions in furtherance of an illegal conspiracy in this district either itself or through its co-conspirators. Defendants also conduct business throughout the United States, including in this district, and they have purposefully availed themselves of the laws of the United States and this district.

12. Defendants engaged in conduct both inside and outside of the United States that caused direct, substantial, reasonably foreseeable, and intended anti-competitive effects upon interstate commerce within the United States and upon import trade and commerce into the United States.

13. The activities of Defendants and their co-conspirators were within the flow of, were intended to have, and did have, a substantial effect on interstate commerce of the United States. Defendants' products are sold in the flow of interstate commerce.

14. Automotive Lamps manufactured abroad by Defendants and sold for use in automobiles either manufactured in the United States or manufactured abroad and sold in the United States are goods brought into the United States for sale and, therefore, constitute import commerce. To the extent any Automotive Lamps are purchased in the United States, and such Automotive Lamps do not constitute import commerce, Defendants' unlawful activities with respect thereto, as more fully alleged herein during the Class Period, had, and continue to have, a direct, substantial, and reasonably foreseeable effect on United States commerce. The anticompetitive conduct, and its effect on United States commerce described herein, proximately caused antitrust injury to Plaintiffs and members of the Classes in the United States.

15. By reason of the unlawful activities hereinafter alleged, Defendants substantially affected commerce throughout the United States, causing injury to Plaintiffs and members of the Classes. Defendants, directly and through their agents, engaged in activities affecting all states, to

fix or inflate prices of Automotive Lamps, and that conspiracy unreasonably restrained trade and adversely affected the market for Automotive Lamps.

16.     Defendants' conspiracy and wrongdoing described herein adversely affected persons and businesses in the United States who purchased Automotive Lamps, including Plaintiffs and the Classes.

## PARTIES

**Plaintiffs**

17.     Plaintiff Martens is a Maryland corporation with its principal place of business in the District of Columbia.  Plaintiff Martens is an authorized Volvo and Volkswagen dealer that sells Volvo- and Volkswagen-brand vehicles containing Automotive Lamps manufactured by one or more of the Defendants or their co-conspirators, as well as Automotive Lamps manufactured by one or more of the Defendants or their co-conspirators.

18.     During the Class Period Plaintiff Martens purchased vehicles containing Automotive Lamps manufactured by one or more of the Defendants or their co-conspirators. Plaintiff Martens also purchased Automotive Lamps, manufactured by one or more of the Defendants or their co-conspirators, for its repair and service business, during the Class Period. Plaintiff Martens purchased and received both the afore-mentioned vehicles and Automotive Lamps in the District of Columbia.  Plaintiff Martens has also displayed, sold, and advertised its vehicles in the District of Columbia during the Class Period.

19.     Plaintiff Hammett is a Mississippi corporation with its principal place of business in Durant, Mississippi.  Plaintiff Hammett is an authorized Ford dealer that sells Ford-brand vehicles containing Automotive Lamps manufactured by one or more of the Defendants or their co-conspirators, as well as Automotive Lamps manufactured by one or more of the Defendants or their co-conspirators.

20.     During the Class Period Plaintiff Hammett purchased vehicles containing Automotive Lamps manufactured by Defendants or their co-conspirators.  Plaintiff Hammett also purchased Automotive Lamps, manufactured by Defendants or their co-conspirators, for its repair and service business, during the Class Period.  Plaintiff Hammett purchased and received both the afore-mentioned vehicles and Automotive Lamps in Mississippi.  Plaintiff Hammett has also displayed, sold, serviced, and advertised its vehicles in Mississippi during the Class Period.

21.     Plaintiff Landers is an Arkansas corporation with its principal place of business in Little Rock, Arkansas.  Plaintiff Landers is an authorized Toyota dealer that sells Toyota-brand vehicles containing Automotive Lamps manufactured by one or more of the Defendants or their co-conspirators, as well as Automotive Lamps manufactured by one or more of the Defendants or their co-conspirators.

22.      During the Class Period Plaintiff Landers purchased vehicles containing Automotive Lamps manufactured by one or more Defendants or their co-conspirators.  Plaintiff Landers also purchased Automotive Lamps, manufactured by one or more Defendants or their co-conspirators, for its repair and service business, during the Class Period. Plaintiff Landers purchased and received both the afore-mentioned vehicles and Automotive Lamps in Arkansas. Plaintiff Landers has also displayed, sold, serviced, and advertised its vehicles in Arkansas during the Class Period.

23.     Plaintiff Superstore is a Minnesota company, with its principal place of business in White Bear Lake, Minnesota.  Plaintiff Superstore is an authorized Buick/GMC dealer, doing business under the name White Bear Lake Superstore.  Plaintiff Superstore sells Buick- and GMC-brand vehicles containing Automotive Lamps manufactured by one or more of the

Defendants or their co-conspirators, as well as Automotive Lamps manufactured by one or more of the Defendants or their co-conspirators.

24.    During the Class Period Plaintiff Superstore purchased vehicles containing Automotive Lamps manufactured by one or more Defendants or their co-conspirators.  Plaintiff Superstore also purchased Automotive Lamps, manufactured by one or more Defendants or their co-conspirators, for its repair and service business, during the Class Period.  Plaintiff Superstore purchased and received both the afore-mentioned vehicles and Automotive Lamps in Minnesota. Plaintiff Superstore has also displayed, sold, serviced, and advertised its vehicles in Minnesota during the Class Period.

25.    Plaintiff Lee is a Florida corporation, with its principal place of business in Fort Walton Beach, Florida.  Plaintiff Lee is presently an authorized GMC dealer.  During the Class Period, Plaintiff Lee was also an authorized Pontiac, Oldsmobile and Jeep dealer.  Plaintiff Lee sells GMC-brand vehicles containing Automotive Lamps manufactured by one or more of the Defendants or their co-conspirators, as well as Automotive Lamps manufactured by one or more of the Defendants or their co-conspirators.  During the Class Period, Plaintiff sold Pontiac-, Oldsmobile-, and Jeep-brand vehicles containing Automotive Lamps manufactured by one or more of the Defendants or their co-conspirators, as well as Automotive Lamps manufactured by one or more of the Defendants or their co-conspirators.

26.    During the Class Period Plaintiff Lee purchased vehicles containing Automotive Lamps manufactured by one or more Defendants or their co-conspirators.  Plaintiff Lee also purchased Automotive Lamps, manufactured by one or more Defendants or their co-conspirators, for its repair and service business, during the Class Period.  Plaintiff Lee purchased

11

and received both the afore-mentioned vehicles and Automotive Lamps in Florida.  Plaintiff Lee
has also displayed, sold, serviced, and advertised its vehicles in Florida during the Class Period.

27.    Plaintiff V.I.P. is a California company with its principal place of business in
Palm Springs, California.  Plaintiff VIP is an authorized Mercedes, BMW, Infiniti, and Hyundai
dealer that sells Mercedes-, BMW-, Infiniti-, and Hyundai-brand vehicles containing Automotive
Lamps manufactured by one or more of the Defendants or their co-conspirators, as well as
Automotive Lamps manufactured by one or more of the Defendants or their co-conspirators.

28.    During the Class Period Plaintiff V.I.P. purchased vehicles containing
Automotive Lamps manufactured by one or more Defendants or their co-conspirators.  Plaintiff
V.I.P. also purchased Automotive Lamps, for its repair and service business, during the Class
Period.   Plaintiff V.I.P. purchased and received both the afore-mentioned vehicles and
Automotive Lamps in California.   Plaintiff V.I.P. has also displayed, sold, serviced, and
advertised its vehicles in California during the Class Period.

29.    Plaintiff Desert is a California company, with its principal place of business in
Rancho Mirage, California.  Plaintiff Desert is an authorized Rolls Royce, Bentley, Aston
Martin, Maserati, Porsche, Jaguar, Land Rover, Audi, Lotus, and Spyker dealer that sells Rolls
Royce-, Bentley-, Aston Martin-, Maserati-, Porsche-, Jaguar-, Land Rover-, Audi-, Lotus-, and
Spyker-brand vehicles containing Automotive Lamps manufactured by one or more of the
Defendants or their co-conspirators, as well as Automotive Lamps manufactured by one or more
of the Defendants or their co-conspirators.

30.    During the Class Period, Plaintiff Desert purchased vehicles containing
Automotive Lamps manufactured by one or more Defendants or their co-conspirators.  Plaintiff
Desert also purchased Automotive Lamps, manufactured by one or more Defendants or their co-

conspirators, for its repair and service business, during the Class Period.  Plaintiff Desert purchased and received both the afore-mentioned vehicles and Automotive Lamps in California. Plaintiff Desert has also displayed, sold, serviced, and advertised its vehicles in California during the Class Period.

31.    Plaintiff Dale Martens was a Kansas corporation, with its principal place of business in Lawrence, Kansas during the Class Period.  Plaintiff Dale Martens was an authorized Nissan and Subaru dealer during the Class Period, that, during the Class Period, sold Nissan- and Subaru-brand vehicles containing Automotive Lamps manufactured by one or more of the Defendants or their co-conspirators, as well as Automotive Lamps manufactured by one or more of the Defendants or their co-conspirators.

32.    During the Class Period Plaintiff Dale Martens purchased vehicles containing Automotive Lamps manufactured by one or more Defendants or their co-conspirators.  Plaintiff Dale Martens also purchased Automotive Lamps, manufactured by one or more Defendants or their co-conspirators, for its repair and service business, during the Class Period.  Plaintiff Dale Martens purchased and received both the afore-mentioned vehicles and Automotive Lamps in Kansas.  Plaintiff Dale Martens has also displayed, sold, serviced, and advertised its vehicles in Kansas during the Class Period.

33.    Plaintiff Green Team is a Kansas corporation, with its principal place of business in Clay Center, Kansas.  Plaintiff Green Team is an authorized Chrysler, Jeep, Dodge, and Ram dealer, that sells Chrysler-, Jeep-, Dodge-, and Ram-brand vehicles containing Automotive Lamps manufactured by one or more of the Defendants or their co-conspirators, as well as Automotive Lamps manufactured by one or more of the Defendants or their co-conspirators.

34.     During the Class Period Plaintiff Green Team purchased vehicles containing Automotive Lamps manufactured by one or more Defendants or their co-conspirators.  Plaintiff Green Team also purchased Automotive Lamps, manufactured by one or more Defendants or their co-conspirators, for its repair and service business, during the Class Period.  Plaintiff Green Team purchased and received both the afore-mentioned vehicles and Automotive Lamps in Kansas.  Plaintiff Green Team has also displayed, sold, serviced, and advertised its vehicles in Kansas during the Class Period.

35.     Plaintiff McGrath is a Delaware corporation, with its principal place of business in Cedar Rapids, Iowa.  Plaintiff McGrath is an authorized Buick, GMC, Chevrolet, Chrysler, Dodge, Jeep, Ram, Kia, and Cadillac dealer, that sells Buick-, GMC-, Chevrolet-, Chrysler-, Dodge-, Jeep-, Ram-, Kia-, and Cadillac-brand cars containing Automotive Lamps manufactured by one or more of the Defendants or their co-conspirators, as well as Automotive Lamps manufactured by one or more of the Defendants or their co-conspirators.

36.     During the Class Period Plaintiff McGrath purchased vehicles containing Automotive Lamps manufactured by one or more Defendants or their co-conspirators.  Plaintiff McGrath also purchased Automotive Lamps, manufactured by one or more Defendants or their co-conspirators, for its repair and service business, during the Class Period.  Plaintiff McGrath purchased and received both the afore-mentioned vehicles and Automotive Lamps in Iowa. Plaintiff McGrath has also displayed, sold, serviced, and advertised its vehicles in Iowa during the Class Period.

37.     Plaintiff Table Rock is a Nebraska corporation, with its principal place of business in Bellevue, Nebraska.  Plaintiff Table Rock is an authorized Hyundai dealer that sells Hyundai-brand cars containing Automotive Lamps manufactured by one or more of the

14

Defendants or their co-conspirators, as well as Automotive Lamps manufactured by one or more of the Defendants or their co-conspirators.

38.     During the Class Period Plaintiff Table Rock purchased vehicles containing Automotive Lamps manufactured one or more Defendants or their co-conspirators.  Plaintiff Table Rock also purchased Automotive Lamps, manufactured by one or more Defendants or their co-conspirators, for its repair and service business, during the Class Period.  Plaintiff Table Rock purchased and received both the afore-mentioned vehicles and Automotive Lamps in Nebraska.  Plaintiff Table Rock has also displayed, sold, serviced, and advertised its vehicles in Nebraska during the Class Period.

39.     Plaintiff Archer-Perdue is a Nebraska corporation, with its principal place of business in Omaha, Nebraska.  Plaintiff Archer-Perdue is an authorized Suzuki dealer, that, during the Class Period, has sold Suzuki-brand cars containing Automotive Lamps manufactured by one or more of the Defendants or their co-conspirators, as well as Automotive Lamps manufactured by one or more of the Defendants or their co-conspirators.

40.     During the Class Period Plaintiff Archer-Perdue purchased vehicles containing Automotive Lamps manufactured by one or more Defendants or their co-conspirators.  Plaintiff Archer-Perdue also purchased Automotive Lamps, manufactured by one or more Defendants or their co-conspirators, for its repair and service business, during the Class Period.  Plaintiff Archer-Perdue purchased and received both the afore-mentioned vehicles and Automotive Lamps in Nebraska.  Plaintiff Archer-Perdue has also displayed, sold, serviced, and advertised its vehicles in Nebraska during the Class Period.

41.     Plaintiff Bonneville is a New Hampshire corporation, with its principal place of business in Manchester, New Hampshire.  Plaintiff Bonneville is an authorized Dodge, Chrysler,

Jeep, and Ram dealer, that sells Chrysler-, Dodge-, Jeep-, and Ram-brand vehicles containing Automotive Lamps manufactured by one or more of the Defendants or their co-conspirators, as well as Automotive Lamps manufactured by one or more of the Defendants or their co-conspirators.

42.     During the Class Period Plaintiff Bonneville purchased vehicles containing Automotive Lamps manufactured by one or more Defendants or their co-conspirators.  Plaintiff Bonneville also purchased Automotive Lamps, manufactured by one or more Defendants or their co-conspirators, for its repair and service business, during the Class Period.  Plaintiff Bonneville purchased and received both the afore-mentioned vehicles and Automotive Lamps in New Hampshire.  Plaintiff Bonneville has also displayed, sold, serviced, and advertised its vehicles in New Hampshire during the Class Period.

43.     Plaintiff Holzhauer is a Delaware corporation, with its principal place of business in Nashville, Illinois.  Plaintiff Holzhauer is an authorized Dodge, Chrysler, and Jeep dealer, that sells Dodge, Chrysler, and Jeep brand vehicles containing Automotive Lamps manufactured by one or more of the Defendants or their co-conspirators, as well as Automotive Lamps manufactured by one or more of the Defendants or their co-conspirators.

44.     During the Class Period Plaintiff Holzhauer purchased vehicles containing Automotive Lamps manufactured by one or more Defendants or their co-conspirators.  Plaintiff Holzhauer also purchased Automotive Lamps, manufactured by one or more Defendants or their co-conspirators, for its repair and service business, during the Class Period.  Plaintiff Holzhauer purchased and received both the afore-mentioned vehicles and Automotive Lamps in Illinois.  Plaintiff Holzhauer has also displayed, sold, serviced, and advertised its vehicles in Illinois during the Class Period.

16

45.     Plaintiff Pitre is a New Mexico corporation, with its principal place of business in Albuquerque, New Mexico.  Plaintiff Pitre is an authorized Buick and GMC dealer that sells Buick- and GMC-brand vehicles containing Automotive Lamps manufactured by one or more of the Defendants or their co-conspirators, as well as Automotive Lamps manufactured by one or more of the Defendants or their co-conspirators.

46.     During the Class Period Plaintiff Pitre purchased vehicles containing Automotive Lamps manufactured by one or more Defendants or their co-conspirators.  Plaintiff Pitre also purchased Automotive Lamps, manufactured by one or more Defendants or their co-conspirators, for its repair and service business, during the Class Period.  Plaintiff Pitre purchased and received both the afore-mentioned vehicles and Automotive Lamps in New Mexico.  Plaintiff Pitre has also displayed, sold, serviced, and advertised its vehicles in New Mexico during the Class Period.

47.     Plaintiff Patsy Lou is a Michigan corporation, with its principal place of business in Flint, Michigan.  Plaintiff Patsy Lou is an authorized Chevrolet dealer that sells Chevrolet-brand vehicles containing Automotive Lamps manufactured by one or more of the Defendants or their co-conspirators, as well as Automotive Lamps manufactured by one or more of the Defendants or their co-conspirators.

48.     During the Class Period Plaintiff Patsy Lou purchased vehicles containing Automotive Lamps manufactured by one or more Defendants or their co-conspirators.  Plaintiff Patsy Lou also purchased Automotive Lamps, manufactured by one or more Defendants or their co-conspirators, for its repair and service business, during the Class Period.  Plaintiff Patsy Lou purchased and received both the afore-mentioned vehicles and Automotive Lamps in Michigan.

Plaintiff Patsy Lou has also displayed, sold, serviced, and advertised its vehicles in Michigan during the Class Period.

49.     Plaintiff John Greene is a North Carolina corporation, with its principal place of business in Morganton, North Carolina.  Plaintiff John Greene is an authorized Chrysler, Dodge, Jeep, and Ram dealer, that sells Chrysler-, Dodge-, Jeep-, and Ram-brand vehicles containing Automotive Lamps manufactured by one or more of the Defendants or their co-conspirators, as well as Automotive Lamps manufactured by one or more of the Defendants or their co-conspirators.

50.     During the Class Period Plaintiff John Greene purchased vehicles containing Automotive Lamps manufactured by one or more Defendants or their co-conspirators.  Plaintiff John Greene also purchased Automotive Lamps, manufactured by one or more Defendants or their co-conspirators, for its repair and service business, during the Class Period.  Plaintiff John Greene purchased and received both the afore-mentioned vehicles and Automotive Lamps in North Carolina.  Plaintiff John Greene has also displayed, sold, serviced, and advertised its vehicles in North Carolina during the Class Period.

51.     Plaintiff Planet Nissan is an Arizona corporation, with its principal place of business in Flagstaff, Arizona.  Plaintiff Planet Nissan is an authorized Nissan and Subaru dealer that sells Nissan- and Subaru-brand vehicles containing Automotive Lamps manufactured by one or more of the Defendants or their co-conspirators, as well as Automotive Lamps manufactured by one or more of the Defendants or their co-conspirators.

52.     During the Class Period Plaintiff Planet Nissan purchased vehicles containing Automotive Lamps manufactured by one or more Defendants or their co-conspirators.  Plaintiff Planet Nissan also purchased Automotive Lamps, manufactured by one or more Defendants or

their co-conspirators, for its repair and service business, during the Class Period.  Plaintiff Planet Nissan purchased and received both the afore-mentioned vehicles and Automotive Lamps in Arizona.  Plaintiff Planet Nissan has also displayed, sold, serviced, and advertised its vehicles in Arizona during the Class Period.

53.     Plaintiff Champion is a Nevada corporation, with its principal place of business in Reno, Nevada.  Plaintiff Champion is an authorized Chevrolet dealer that sells Chevrolet-brand vehicles containing Automotive Lamps manufactured by one or more of the Defendants or their co-conspirators, as well as Automotive Lamps manufactured by one or more of the Defendants or their co-conspirators.

54.     During the Class Period Plaintiff Champion purchased vehicles containing Automotive Lamps manufactured by one or more Defendants or their co-conspirators.  Plaintiff Champion also purchased Automotive Lamps, manufactured by one or more Defendants or their co-conspirators, for its repair and service business, during the Class Period.  Plaintiff Champion purchased and received both the afore-mentioned vehicles and Automotive Lamps in Nevada. Plaintiff Champion has also displayed, sold, serviced, and advertised its vehicles in Nevada during the Class Period.

55.     Plaintiff Commonwealth Motors is a Delaware corporation, with its principal place of business in Lawrence, Massachusetts.  Plaintiff Commonwealth Motors is an authorized Chevrolet, Honda, and Kia dealer, that sells Chevrolet, Honda, and Kia brand vehicles containing Automotive Lamps manufactured by one or more of the Defendants or their co-conspirators, as well as Automotive Lamps manufactured by one or more of the Defendants or their co-conspirators.

56.     During the Class Period Plaintiff Commonwealth Motors purchased vehicles containing Automotive Lamps manufactured by one or more Defendants or their co-conspirators. Plaintiff Commonwealth Motors also purchased Automotive Lamps, manufactured by one or more Defendants or their co-conspirators, for its repair and service business, during the Class Period.  Plaintiff Commonwealth Motors purchased and received both the afore-mentioned vehicles and Automotive Lamps in Massachusetts.  Plaintiff Commonwealth Motors has also displayed, sold, serviced, and advertised its vehicles in Massachusetts during the Class Period.

57.     Plaintiff Commonwealth Volkswagen is a Massachusetts corporation with its principal place of business in Lawrence, Massachusetts.  Plaintiff Commonwealth Volkswagen is an authorized Volkswagen dealer, that sells Volkswagen brand vehicles containing Automotive Lamps manufactured by one or more of the Defendants or their co-conspirators, as well as Automotive Lamps manufactured by one or more of the Defendants or their co-conspirators.

58.     During the Class Period Plaintiff Commonwealth Volkswagen purchased vehicles containing Automotive Lamps manufactured by one or more Defendants or their co-conspirators. Plaintiff Commonwealth Volkswagen also purchased Automotive Lamps, manufactured by one or more Defendants or their co-conspirators, for its repair and service business, during the Class Period.  Plaintiff Commonwealth Volkswagen purchased and received both the afore-mentioned vehicles and Automotive Lamps in Massachusetts.  Plaintiff Commonwealth Volkswagen has also displayed, sold, serviced, and advertised its vehicles in Massachusetts during the Class Period.

59.     Plaintiff Commonwealth Nissan is a Massachusetts corporation with its principal place of business in Lawrence, Massachusetts.  Plaintiff Commonwealth Nissan is an authorized Nissan dealer, that sells Nissan-brand vehicles containing Automotive Lamps manufactured by

one or more of the Defendants or their co-conspirators, as well as Automotive Lamps manufactured by one or more of the Defendants or their co-conspirators.

60.     During the Class Period Plaintiff Commonwealth Nissan purchased vehicles containing Automotive Lamps manufactured by one or more Defendants or their co-conspirators. Plaintiff Commonwealth Nissan also purchased Automotive Lamps, manufactured by one or more Defendants or their co-conspirators, for its repair and service business, during the Class Period. Plaintiff Commonwealth Nissan purchased and received both the afore-mentioned vehicles and Automotive Lamps in Massachusetts. Plaintiff Commonwealth Nissan has also displayed, sold, serviced, and advertised its vehicles in Massachusetts during the Class Period.

61.     Plaintiff Ramey is a West Virginia company with its principal place of business in Princeton, West Virginia. Plaintiff Ramey is an authorized Toyota, Chrysler, Dodge, Jeep, and Ram dealer, that sells Toyota-, Chrysler-, Dodge-, Jeep-, and Ram-brand vehicles containing Automotive Lamps manufactured by one or more of the Defendants or their co-conspirators, as well as Automotive Lamps manufactured by one or more of the Defendants or their co-conspirators.

62.     During the Class Period Plaintiff Ramey purchased vehicles containing Automotive Lamps manufactured by one or more Defendants or their co-conspirators. Plaintiff Ramey also purchased Automotive Lamps, manufactured by one or more Defendants or their co-conspirators, for its repair and service business, during the Class Period. Plaintiff Ramey purchased and received both the afore-mentioned vehicles and Automotive Lamps in West Virginia. Plaintiff Ramey has also displayed, sold, serviced, and advertised its vehicles in West Virginia during the Class Period.

63.     Plaintiff Thornhill is a West Virginia corporation, with its principal place of business in Chapmanville, West Virginia.  Plaintiff Thornhill is an authorized Chevrolet, Buick, and GMC dealer that sells Chevrolet-, Buick-, and GMC-brand vehicles containing Automotive Lamps manufactured by one or more of the Defendants or their co-conspirators, as well as Automotive Lamps manufactured by one or more of the Defendants or their co-conspirators.

64.     During the Class Period Plaintiff Thornhill purchased vehicles containing Automotive Lamps manufactured by one or more Defendants or their co-conspirators.  Plaintiff Thornhill also purchased Automotive Lamps, manufactured by one or more Defendants or their co-conspirators, for its repair and service business, during the Class Period.  Plaintiff Thornhill purchased and received both the afore-mentioned vehicles and Automotive Lamps in West Virginia.  Plaintiff Thornhill has also displayed, sold, serviced, and advertised its vehicles in West Virginia during the Class Period.

65.     Plaintiff Lakeland is a Wisconsin corporation with its principal place of business in Sheboygan, Wisconsin.  Plaintiff Lakeland is an authorized Toyota, Honda, Mazda, and Subaru dealer that sells Toyota- Honda-, Mazda-, and Subaru-brand vehicles containing Automotive Lamps manufactured by one or more of the Defendants or their co-conspirators, as well as Automotive Lamps manufactured by one or more of the Defendants or their co-conspirators.

66.     During the Class Period Plaintiff Lakeland purchased vehicles containing Automotive Lamps manufactured by one or more Defendants or their co-conspirators.  Plaintiff Lakeland also purchased Automotive Lamps, manufactured by one or more Defendants or their co-conspirators, for its repair and service business, during the Class Period.  Plaintiff Lakeland purchased and received both the afore-mentioned vehicles and Automotive Lamps in Wisconsin.

Plaintiff Lakeland has also displayed, sold, serviced, and advertised its vehicles in Wisconsin during the Class Period.

67.     Plaintiff Salt Lake Valley is a Utah company, with its principal place of business in Salt Lake City, Utah.  Plaintiff Salt Lake Valley is an authorized Buick and GMC dealer that sells Buick- and GMC-brand vehicles containing Automotive Lamps manufactured by one or more of the Defendants or their co-conspirators, as well as Automotive Lamps manufactured by one or more of the Defendants or their co-conspirators.

68.     During the Class Period Plaintiff Salt Lake Valley purchased vehicles containing Automotive Lamps manufactured by one or more Defendants or their co-conspirators.  Plaintiff Salt Lake Valley also purchased Automotive Lamps, manufactured by one or more Defendants or their co-conspirators, for its repair and service business, during the Class Period.  Plaintiff Salt Lake Valley purchased and received both the afore-mentioned vehicles and Automotive Lamps in Utah.  Plaintiff Salt Lake Valley has also displayed, sold, serviced, and advertised its vehicles in Utah during the Class Period.

69.     Plaintiff Capitol Chevrolet is an Oregon corporation, with its principal place of business in Salem, Oregon.  Plaintiff Capitol Chevrolet is an authorized Chevrolet, Cadillac, and Subaru dealer that sells Chevrolet-, Cadillac-, and Subaru-brand vehicles containing Automotive Lamps manufactured by one or more of the Defendants or their co-conspirators, as well as Automotive Lamps manufactured by one or more of the Defendants or their co-conspirators.

70.     During the Class Period Plaintiff Capitol Chevrolet purchased vehicles containing Automotive Lamps manufactured by one or more Defendants or their co-conspirators.  Plaintiff Capitol Chevrolet also purchased Automotive Lamps, manufactured by one or more Defendants or their co-conspirators, for its repair and service business, during the Class Period.  Plaintiff

Capitol Chevrolet purchased and received both the afore-mentioned vehicles and Automotive Lamps in Oregon. Plaintiff Capitol Chevrolet has also displayed, sold, serviced, and advertised its vehicles in Oregon during the Class Period.

71.     Plaintiff Capitol Toyota is an Oregon corporation with its principal place of business in Salem, Oregon. Plaintiff Capitol Toyota is an authorized Toyota dealer that sells Toyota-brand vehicles containing Automotive Lamps manufactured by one or more of the Defendants or their co-conspirators, as well as Automotive Lamps manufactured by one or more of the Defendants or their co-conspirators.

72.     During the Class Period Plaintiff Capitol Toyota purchased vehicles containing Automotive Lamps manufactured by one or more Defendants or their co-conspirators. Plaintiff Capitol Toyota also purchased Automotive Lamps, manufactured by one or more Defendants or their co-conspirators, for its repair and service business, during the Class Period. Plaintiff Capitol Toyota purchased and received both the afore-mentioned vehicles and Automotive Lamps in Oregon. Plaintiff Capitol Toyota has also displayed, sold, serviced, and advertised its vehicles in Oregon during the Class Period.

73.     Plaintiff Beck is a South Dakota corporation, with its principal place of business in Pierre, South Dakota. Plaintiff Beck is an authorized Chevrolet and Cadillac dealer that sells Chevrolet- and Cadillac-brand vehicles containing Automotive Lamps manufactured by one or more of the Defendants or their co-conspirators, as well as Automotive Lamps manufactured by one or more of the Defendants or their co-conspirators.

74.     During the Class Period Plaintiff Beck purchased vehicles containing Automotive Lamps manufactured by one or more Defendants or their co-conspirators. Plaintiff Beck also purchased Automotive Lamps, manufactured by one or more Defendants or their co-

24

conspirators, for its repair and service business, during the Class Period.  Plaintiff Beck purchased and received both the afore-mentioned vehicles and Automotive Lamps in South Dakota.  Plaintiff Beck has also displayed, sold, serviced, and advertised its vehicles in South Dakota during the Class Period.

75.    Plaintiff Wade is a Utah corporation, with its principal place of business in St. George, Utah.  Plaintiff Wade is an authorized Toyota dealer that sells Toyota-brand cars containing Automotive Lamps manufactured by the Defendants or their co-conspirators, as well as Automotive Lamps manufactured by the Defendants or their co-conspirators.

76.    During the Class Period Plaintiff Wade purchased vehicles containing Automotive Lamps manufactured by one or more Defendants or their co-conspirators.  Plaintiff Wade also purchased Automotive Lamps, manufactured by one or more Defendants or their co-conspirators, for its repair and service business, during the Class Period.  Plaintiff Wade purchased and received both the afore-mentioned vehicles and Automotive Lamps in Utah.  Plaintiff Wade has also displayed, sold, serviced, and advertised its vehicles in Utah during the Class Period.

77.    Plaintiff Johnson is a Mississippi limited liability company, with its principal place of business in Meridian, Mississippi.  Plaintiff Johnson is an authorized Toyota dealer that sells Toyota-brand cars containing Automotive Lamps manufactured by the Defendants or their co-conspirators, as well as Automotive Lamps manufactured by the Defendants or their co-conspirators.

78.    During the Class Period Plaintiff Johnson purchased vehicles containing Automotive Lamps manufactured by one or more Defendants or their co-conspirators.  Plaintiff Johnson also purchased Automotive Lamps manufactured by one or more Defendants or their

co-conspirators, for its repair and service business, during the Class Period. Plaintiff Johnson purchased and received both the afore-mentioned vehicles and Automotive Lamps in Mississippi. Plaintiff Johnson has also displayed, sold, serviced, and advertised its vehicles in Mississippi during the Class Period.

79.     Plaintiff Hartley is a New York corporation, with its principal place of business in Jamestown, New York.  During the Class Period, Plaintiff Hartley has been an authorized Honda, Buick, Pontiac, and GM dealer that sold Honda-, Buick-, Pontiac-, and GM-brand cars containing Automotive Lamps manufactured by the Defendants or their co-conspirators, as well as Automotive Lamps manufactured by the Defendants or their co-conspirators.

80.     During the Class Period Plaintiff Hartley purchased vehicles containing Automotive Lamps manufactured by one or more Defendants or their co-conspirators.  Plaintiff Hartley also purchased Automotive Lamps manufactured by one or more Defendants or their co-conspirators, for its repair and service business, during the Class Period.  Plaintiff Hartley purchased and received both the afore-mentioned vehicles and Automotive Lamps in New York. Plaintiff Hartley has also displayed, sold, serviced, and advertised its vehicles in New York during the Class Period.

81.     Plaintiff Lee Honda is a Maine corporation, with its principal place of business in Auburn, Maine.  Plaintiff Lee Honda is an authorized Honda dealer that sells Honda-brand cars containing Automotive Lamps manufactured by the Defendants or their co-conspirators, as well as Automotive Lamps manufactured by the Defendants or their co-conspirators.

82.     During the Class Period Plaintiff Lee Honda purchased vehicles containing Automotive Lamps manufactured by one or more Defendants or their co-conspirators.  Plaintiff Lee Honda also purchased Automotive Lamps manufactured by one or more Defendants or their

co-conspirators, for its repair and service business, during the Class Period.  Plaintiff Lee Honda purchased and received both the afore-mentioned vehicles and Automotive Lamps in Maine. Plaintiff Lee Honda has also displayed, sold, serviced, and advertised its vehicles in Maine during the Class Period.

83.     Plaintiff Topsham is a Maine corporation, with its principal place of business in Topsham, Maine.  Plaintiff Topsham is an authorized Toyota dealer that sells Toyota-brand cars containing Automotive Lamps manufactured by the Defendants or their co-conspirators, as well as Automotive Lamps manufactured by the Defendants or their co-conspirators.

84.     During the Class Period Plaintiff Topsham purchased vehicles containing Automotive Lamps manufactured by one or more Defendants or their co-conspirators.   Plaintiff Topsham also purchased Automotive Lamps manufactured by one or more Defendants or their co-conspirators, for its repair and service business, during the Class Period.  Plaintiff Topsham purchased and received both the afore-mentioned vehicles and Automotive Lamps in Maine. Plaintiff Topsham has also displayed, sold, serviced, and advertised its vehicles in Maine during the Class Period.

85.     Plaintiff Hazelwood is an Arkansas corporation, with its principal place of business in Hazelwood, Missouri.  Plaintiff Hazelwood is an authorized Toyota dealer that sells Toyota-brand cars containing Automotive Lamps manufactured by the Defendants or their co-conspirators, as well as Automotive Lamps manufactured by the Defendants or their co-conspirators.

86.     During the Class Period Plaintiff Hazelwood purchased vehicles containing Automotive Lamps manufactured by one or more Defendants or their co-conspirators.   Plaintiff Hazelwood also purchased Automotive Lamps manufactured by one or more Defendants or their

co-conspirators, for its repair and service business, during the Class Period.  Plaintiff Hazelwood purchased and received both the afore-mentioned vehicles and Automotive Lamps in Arkansas. Plaintiff Hazelwood has also displayed, sold, serviced, and advertised its vehicles in Arkansas during the Class Period.

87.     Plaintiff Cannon is a Mississippi corporation, with its principal place of business in Greenwood, Mississippi.  Plaintiff Cannon is an authorized Chevrolet and Cadillac dealer that sells Chevrolet- and Cadillac-brand cars containing Automotive Lamps manufactured by the Defendants or their co-conspirators, as well as Automotive Lamps manufactured by the Defendants or their co-conspirators.

88.     During the Class Period Plaintiff Cannon purchased vehicles containing Automotive Lamps manufactured by one or more Defendants or their co-conspirators.  Plaintiff Cannon also purchased Automotive Lamps manufactured by one or more Defendants or their co-conspirators, for its repair and service business, during the Class Period.  Plaintiff Cannon purchased and received both the afore-mentioned vehicles and Automotive Lamps in Mississippi.  Plaintiff Cannon has also displayed, sold, serviced, and advertised its vehicles in Mississippi during the Class Period.

89.     Plaintiff Cannon Nissan is a Mississippi limited liability company with its principal place of business in Jackson, Mississippi.  Plaintiff Cannon is an authorized Nissan dealer that sells Nissan-brand cars containing Automotive Lamps manufactured by the Defendants or their co-conspirators, as well as Automotive Lamps manufactured by the Defendants or their co-conspirators.

90.     During the Class Period Plaintiff Cannon Nissan purchased vehicles containing Automotive Lamps manufactured by one or more Defendants or their co-conspirators.  Plaintiff

28

Cannon Nissan also purchased Automotive Lamps, manufactured by one or more Defendants or their co-conspirators, for its repair and service business, during the Class Period.  Plaintiff Cannon purchased and received both the afore-mentioned vehicles and Automotive Lamps in Mississippi.  Plaintiff Cannon has also displayed, sold, serviced, and advertised its vehicles in Mississippi during the Class Period.

91.     Plaintiff Hudson Nissan is a South Carolina limited liability company with its principal place of business in North Charleston, South Carolina.  Plaintiff Hudson Nissan is an authorized Nissan dealer that sells Nissan-brand cars containing Automotive Lamps manufactured by the Defendants or their co-conspirators, as well as Automotive Lamps manufactured by the Defendants or their co-conspirators.

92.     During the Class Period Plaintiff Hudson Nissan purchased vehicles containing Automotive Lamps manufactured by one or more Defendants or their co-conspirators.  Plaintiff Hudson Nissan also purchased Automotive Lamps, manufactured by one or more Defendants or their co-conspirators, for its repair and service business, during the Class Period.  Plaintiff Hudson Nissan purchased and received both the afore-mentioned vehicles and Automotive Lamps in South Carolina.  Plaintiff Hudson Nissan has also displayed, sold, serviced, and advertised its vehicles in South Carolina during the Class Period.

93.     Plaintiff Gastonia Nissan is a North Carolina limited liability company with its principal place of business in Gastonia, North Carolina.  Plaintiff Gastonia Nissan is an authorized Nissan dealer that sells Nissan-brand cars containing Automotive Lamps manufactured by the Defendants or their co-conspirators, as well as Automotive Lamps manufactured by the Defendants or their co-conspirators.

94.     During the Class Period Plaintiff Gastonia Nissan purchased vehicles containing Automotive Lamps manufactured by one or more Defendants or their co-conspirators.  Plaintiff Gastonia Nissan also purchased Automotive Lamps, manufactured by one or more Defendants or their co-conspirators, for its repair and service business, during the Class Period.  Plaintiff Gastonia Nissan purchased and received both the afore-mentioned vehicles and Automotive Lamps in North Carolina.  Plaintiff Gastonia Nissan has also displayed, sold, serviced, and advertised its vehicles in North Carolina during the Class Period.

95.     Plaintiff Bristol Toyota is a Tennessee limited liability company with its principal place of business in Bristol, Tennessee.  Plaintiff Bristol Toyota is an authorized Toyota dealer that sells Toyota-brand cars containing Automotive Lamps manufactured by the Defendants or their co-conspirators, as well as Automotive Lamps manufactured by the Defendants or their co-conspirators.

96.     During the Class Period Plaintiff Bristol Toyota purchased vehicles containing Automotive Lamps manufactured by one or more Defendants or their co-conspirators.  Plaintiff Bristol Toyota also purchased Automotive Lamps, manufactured by one or more Defendants or their co-conspirators, for its repair and service business, during the Class Period.  Plaintiff Bristol Toyota purchased and received both the afore-mentioned vehicles and Automotive Lamps in Tennessee.  Plaintiff Bristol Toyota has also displayed, sold, serviced, and advertised its vehicles in Tennessee during the Class Period.

97.     Plaintiff Shearer is a Vermont corporation with its principal place of business in Rutland, Vermont.  Plaintiff Shearer is an authorized Honda dealer, who sells Honda-brand vehicles containing Automotive Lamps manufactured by one or more of the Defendants or their

co-conspirators, as well as Automotive Lamps manufactured by one or more of the Defendants or their co-conspirators.

98. During the Class Period Plaintiff Shearer purchased vehicles containing Automotive Lamps manufactured by one or more Defendants or their co-conspirators. Plaintiff Shearer also purchased Automotive Lamps, manufactured by one or more Defendants or their co-conspirators, for its repair and service business, during the Class Period. Plaintiff Shearer purchased and received both the afore-mentioned vehicles and Automotive Lamps in Vermont. Plaintiff Shearer has also displayed, sold, serviced and advertised its vehicles in Vermont during the Class Period.

99. Plaintiff Apex is a Vermont corporation with its principal place of business in South Burlington, Vermont. Plaintiff Apex is an authorized Acura dealer, who sells Acura-brand vehicles containing Automotive Lamps manufactured by one or more of the Defendants or their co-conspirators, as well as Automotive Lamps manufactured by one or more of the Defendants or their co-conspirators.

100. During the Class Period Plaintiff Apex purchased vehicles containing Automotive Lamps manufactured by one or more Defendants or their co-conspirators. Plaintiff Apex also purchased Automotive Lamps, manufactured by one or more Defendants or their co-conspirators, for its repair and service business, during the Class Period. Plaintiff Apex purchased and received both the afore-mentioned vehicles and Automotive Lamps in Vermont. Plaintiff Apex has also displayed, sold, serviced and advertised its vehicles in Vermont during the Class Period.

**<u>Defendants</u>**

101.    Defendant Koito is a Japanese corporation with its principal place of business in Tokyo, Japan.  Koito—directly and/or through its subsidiaries, which it wholly owned and/or controlled—manufactured, marketed, and/or sold Automotive Lamps that were purchased throughout the United States, including in this District, during the Class Period.  Koito is the number one supplier of automotive lighting systems in the world and holds a 26% share of the global market for such products.  In the United States, Koito supplies automotive lighting products to Toyota, Honda, Ford, BMW, Subaru, Mitsubishi, Nissan, Lexus, GM, and Chrysler. In 2011, Koito had total net sales of $5.16 billion, including net sales in North America of $550 million.

102.    Defendant Ichikoh is a Japanese corporation with its principal place of business in Kanagawa-ken, Japan.  Ichikoh—directly and/or through its subsidiaries, which it wholly owned and/or controlled—manufactured, marketed, and/or sold Automotive Lamps that were purchased throughout the United States, including in this District, during the Class Period.  Ichikoh's main customers include Toyota, Subaru, Nissan, and Honda.  In 2011, Ichikoh had net sales of $1.12 billion.

103.    Defendant Stanley is a Japanese corporation with its principal place of business in Tokyo, Japan.  Stanley—directly and/or through its subsidiaries, which it wholly owned and/or controlled—manufactured, marketed, and/or sold Automotive Lamps that were purchased throughout the United States, including in this District, during the Class Period.  Stanley's major customers include Honda and Toyota.  In 2011, Stanley had total net sales of $2.98 billion, including net sales in North America of $396.4 million.

104.    Defendant Mitsuba Corporation ("Mitsuba") is a Japanese corporation with its principal place of business in Gunma, Japan.  Mitsuba—directly and/or through its subsidiaries, which it wholly owned and/or controlled—manufactured, marketed, and/or sold Automotive Lamps that were purchased throughout the United States, including in this District, during the Class Period.  In 2011, Mitsuba had total net sales of $2.52 billion, including net sales of $542 million in the United States, Mexico, and Brazil.

## AGENTS AND CO-CONSPIRATORS

105.    Each Defendant acted as the principal of or agent for the other Defendant with respect to the acts, violations, and common course of conduct alleged.

106.    Various persons, partnerships, sole proprietors, firms, corporations, and individuals not named as Defendants in this lawsuit, the identities of which are presently unknown, have participated as co-conspirators with Defendants in the offenses alleged in this Complaint, and have performed acts and made statements in furtherance of the conspiracy or in furtherance of the anti-competitive conduct.

107.    Whenever in this Complaint reference is made to any act, deed, or transaction of any corporation or limited liability entity, the allegation means that the corporation or limited liability entity engaged in the act, deed, or transaction by or through its officers, directors, agents, employees, or representatives while they were actively engaged in the management, direction, control, or transaction of the corporation's or limited liability entity's business or affairs.

## FACTUAL ALLEGATIONS

### A.    The Automotive Lamp Industry

108.    Automotive Lamps, as used herein, consist of headlamps and rear combination lamps.  Headlamps on vehicles are primarily responsible for illuminating the road in front of the vehicle during periods of low visibility without blinding oncoming traffic.  In addition,

headlamps make a vehicle easily visible. Rear combination lamps functionally integrate communication signals from rear lights to inform drivers behind the vehicle of the presence of the car; stop lamps indicate that the brake is activated, turn signal lamps give a flashing warning light on the side of the vehicle toward the direction that will be made, and backup lamps assure the safety of the rear side of the car and indicate that the vehicle is moving backwards. *See* Figures 1, 2, 3 and 4.



HEADLAMP

Figure 1



REAR COMBINATION LAMP

Figure 2



Figure 3 (Headlamps)



Figure 4 (Rear Combination Lamps)

109.    Automotive Lamps are installed by automobile original equipment manufacturers ("OEMs") in new cars as part of the automotive manufacturing process.  They are also installed in cars to replace worn out, defective, or damaged Automotive Lamps.

35

110.   When purchasing Automotive Lamps, OEMs issue Requests for Quotation ("RFQs") to automotive parts suppliers—Automotive Lamps are not commodity items. Automotive parts suppliers submit quotations, or bids, to OEMs in response to RFQs and the OEMs usually award the business to the selected automotive parts supplier for four to six years. Typically, the bidding process begins approximately three years prior to the start of production of a new model.  *See* Figure 5, below.





111.   Suppliers, including Defendants, supply OEMs with both Automotive Lamps to be installed in vehicles and Automotive Lamps to be used for replacement purposes.

112.    The Defendants and their co-conspirators supplied Automotive Lamps to OEMs for installation in vehicles manufactured and sold in the United States and elsewhere, for sale in the United States.  The Defendants and their co-conspirators manufactured Automotive Lamps (a) in the United States for installation in vehicles manufactured and sold in the United States, (b) abroad for export to the United States and installation in vehicles manufactured and sold in the United States, and (c) abroad for installation in vehicles manufactured abroad for export to and sale in the United States.

113.    Plaintiffs and members of the proposed Classes purchased Automotive Lamps indirectly from the Defendants and their co-conspirators.  By way of example, automobile dealers indirectly purchase Automotive Lamps from the Defendants when they purchase new vehicles to sell or lease to consumers.  Likewise, when repairing a damaged vehicle or where the vehicle's Automotive Lamps are defective, Plaintiffs and other automobile dealers indirectly purchase replacement Automotive Lamps from Defendants.

114.    Replacement Automotive Lamps sold by OEMs to dealerships are the same as the Automotive Lamps installed in vehicles and are made by the same manufacturer who made the Automotive Lamps originally installed.  Such replacement parts are not the same as aftermarket parts, which are made by different manufacturers than those who manufactured the original parts.  The prices of replacement Automotive Lamps were inflated by Defendants' collusion.

115.    In 2012, the U.S. market for automotive lighting is estimated to be $4.4 billion. More than 90% of automotive lighting is related to exterior lighting and the headlamp market alone accounts for more than 70% of total automotive lighting.

**B.    <u>The Structure and Characteristics of the Automotive Lamp Market Render the Conspiracy More Plausible.</u>**

116.     The structure and other characteristics of the Automotive Lamp market in the United States are conducive to a price-fixing agreement, and have made collusion particularly attractive in these markets.  Specifically, the Automotive Lamp market: (1) has high barriers to entry; (2) has inelasticity of demand; and (3) is rife with opportunities to conspire.

### 1.     The Automotive Lamp Market Has High Barriers to Entry.

117.     A collusive arrangement that raises product prices above competitive levels would, under basic economic principles, attract new entrants seeking to benefit from the supra-competitive pricing.  Where, however, there are significant barriers to entry, new entrants are less likely.  Thus, barriers to entry help facilitate the formation and maintenance of a cartel.

118.     There are substantial barriers that preclude, reduce, or make more difficult entry into the Automotive Lamp market.  A new entrant into the business would face costly and lengthy start-up costs, including multi-million dollar costs associated with manufacturing plants and equipment, energy, transportation, distribution infrastructure, skilled labor, and long-standing customer relationships.

119.     Each of the Defendants also owns at least one patent for Automotive Lamps. These patents place a significant and costly burden on potential new entrants, who must avoid infringing on the patents when entering the market with a new product.

120.     In addition, OEMs cannot randomly change Automotive Lamps suppliers after a supplier is initially selected because the OEMs design the features of their vehicles so that the Automotive Lamps the OEM purchases for a vehicle are then integrated with the electronics, mechanics, thermal distribution, and other features of the particular vehicle model.  Thus, the design must be synergized by the Automotive Lamps manufacturers and OEMs.  It would be difficult for a new market entrant to do so.

### 2.    There is Inelasticity of Demand for Automotive Lamps.

121.    "Elasticity" is a term used to describe the sensitivity of supply and demand to changes in one or the other.  For example, demand is said to be "inelastic" if an increase in the price of a product results in only a small decline in the quantity sold of that product, if any.  In other words, customers have nowhere to turn for alternative, cheaper products of similar quality, and so continue to purchase despite a price increase.

122.    For a cartel to profit from raising prices above competitive levels, demand must be relatively inelastic at competitive prices.  Otherwise, increased prices would result in declining sales, revenues, and profits, as customers purchased substitute products or declined to buy altogether.  Inelastic demand is a market characteristic that facilitates collusion, allowing producers to raise their prices without triggering customer substitution and lost sales revenue.

123.    Demand for Automotive Lamps is highly inelastic. This is because there are no close substitutes for these products.  Additionally, customers must purchase Automotive Lamps as essential parts of a vehicle, regardless of whether prices are kept at supra-competitive levels. Customers wanting to purchase a car simply have no choice but to purchase Automotive Lamps.

### 3.    Defendants had Ample Opportunities to Conspire

124.    Defendants attended industry events where they had the opportunity to meet, have improper discussions under the guise of legitimate business contacts, and perform acts necessary for the operation and furtherance of the conspiracy.  Members of the Automotive Lamps industry regularly hold symposiums to communicate the most recent technologies in the industry.  As one industry publication explained, "life in the world's automotive lighting industry is rather like life in a small town:  almost everyone knows what almost everyone else is doing, most of the time."

C.    **Global Government Investigation Into Price-Fixing in the Automotive Parts Industry**

125.    A globally coordinated antitrust investigation is taking place in the United States, Europe, and Japan, aimed at suppliers of automotive parts.  A JFTC official told a leading legal publication that automotive parts supplier investigations by the JFTC, DOJ, and European Commission would continue widening because the automotive industry as a whole comprises many sub-industries.  He characterized the investigations, being conducted by the U.S., European and Japanese antitrust authorities, as "large and broad," and he declined to deny that this "would be history's largest case."

126.    The DOJ Antitrust Division's broad criminal investigation into illegal price fixing and bid rigging in the automotive parts industry is the largest criminal investigation the Antitrust Division has ever pursued.  The ongoing cartel investigation of price-fixing and bid-rigging in the automobile parts industry has yielded more than $790 million in criminal fines, already surpassing the total amount in criminal fines obtained by the DOJ's Antitrust Division for all of last fiscal year.

127.    On March 13, 2012, Defendants announced that the JFTC had raided their headquarters and some branch offices on suspicion of antitrust violations.  At the time, a person familiar with the investigation stated that the authorities suspected the suppliers had, for over a decade, been fixing the prices of Automotive Lamps ahead of bidding by car manufacturers.  The *Nikkei* reported that the JFTC carried out raids at 20 locations, including the headquarters of each Defendant.

128.    On March 21, 2013, the JFTC handed down fines totaling $49.1 million, including a $36 million fine against Koito and a $13.1 million fine against Ichikoh for violating antitrust laws by forming a cartel to fix prices for Automotive Lamps.   On March 21, 2013, the

JFTC also announced cease-and-desist orders against the violating companies, requiring them to: (i) immediately pass resolutions that they would terminate any illegal conduct in the Automotive Lamps industry; (ii) contact any automobile maker who may have purchased their Automotive Lamps through collusive bidding processes; (iii) refrain from engaging in such illegal conduct in the future; and (iv) implement employee antitrust compliance programs.  According to the JFTC, fellow conspirator Stanley also violated antitrust laws, but did not receive a cease-and-desist order.

129.    The Defendants rigged the bidding process for supply contracts with automobile makers for Automotive Lamps, by pre-ordaining the winners and losers.  The JFTC explained that these companies "substantially restrained competition in the fields of headlamps and rear combination lamps ordered by each automobile company, by designating successful bidders and managing to have the designated successful bidders win the bids, respectively."

**D.      Defendants' Collusive Conduct**

130.    Defendants conspired to rig bids, fix prices and allocate business with regard to Automotive Lamps.

131.    Defendants colluded to make certain that they would not have to compete for OEMs' business and would be able to charge anti-competitively inflated prices for Automotive Lamps.

**E.      Guilty Pleas in Related Markets in the Automotive Industry**

132.    On January 30, 2012, the DOJ announced that Yazaki Corporation ("Yazaki") had agreed to pay a $470 million fine and plead guilty to a three-count criminal information charging Yazaki with: (1) participating in a combination and conspiracy with its co-conspirators to suppress and eliminate competition in the automotive parts industry by agreeing to rig bids for, and to fix, stabilize, and maintain the prices of, automotive wire harnesses and related products

sold to certain automobile manufacturers in the United States and elsewhere from at least as early as January 2000 and continuing until at least February 2010 in violation of the Sherman Act, 15 U.S.C. § 1; (2) participating in a combination and conspiracy to suppress and eliminate competition in the automotive parts industry by agreeing to rig bids for, and to fix, stabilize, and maintain the prices of, instrument panel clusters sold to certain automobile manufacturers in the United States and elsewhere, from at least as early as December 2002 until at least February 2010, in violation of the Sherman Antitrust Act, 15 U.S.C. § 1; and (3) participating in a combination and conspiracy with its co-conspirators to suppress and eliminate competition in the automotive parts industry by agreeing to rig bids for, and to fix, stabilize, and maintain the prices of fuel senders sold to certain automobile manufacturers in the United States and elsewhere from at least as early as March 2004 and continuing until at least February 2010 in violation of the Sherman Act, 15 U.S.C. § 1.

133.   In addition to Yazaki, five executives from Yazaki (all Japanese nationals)—Tsuneaki Hanamura, Ryoji Kawai, Shigeru Ogawa, Kazuhiko Kashimoto, and Hisamitsu Takada—pleaded guilty to their participation in a conspiracy to suppress and eliminate competition in the automotive parts industry by agreeing to rig bids for, and to fix, stabilize, and maintain the prices of automotive wire harnesses sold to certain automobile manufacturers in the United States and elsewhere in violation of the Sherman Act, 15 U.S.C. § 1.  These five Yazaki executives will each pay a $20,000 criminal fine and serve prison time ranging from 15 months to two years.  The two-year sentences would be the longest term of imprisonment imposed on a foreign national voluntarily submitting to U.S. jurisdiction for a Sherman Act antitrust violation.

134.   On September 29, 2011, the DOJ announced that Furukawa Electric Co. Ltd. ("Furukawa") had agreed to plead guilty and to pay a $200 million fine for its role in a criminal

price-fixing and bid-rigging conspiracy involving the sale of automotive wire harnesses to automobile manufacturers.

135.    Three of Furukawa's executives also pleaded guilty to the same conspiracy.  The court sentenced two of the executives to 15- and 18-month prison sentences, to be served in the United States.

136.    A number of additional companies have pleaded guilty to fixing the prices of other automotive parts, including automotive wire harnesses, instrument panel clusters, fuel senders and occupant safety restraint systems.  These companies include: Fujikura Ltd., GS Electech, Inc., TRW Deutschland Holding GmbH, Autoliv, Inc., and Nippon Seiki Co., Ltd.

137.    The U.S. government has said its automotive parts cartel criminal investigation will continue and other suppliers could be charged.

138.    "This criminal activity has a significant impact on the automotive manufacturers in the United States, Canada, Japan, and Europe and has been occurring for at least a decade. The conduct had also affected commerce on a global scale in almost every market where automobiles are manufactured and/or sold," said FBI's Special Agent in Charge Andrew G. Arena.

139.    "When companies partner to control and price fix bids or contracts, it undermines the foundation of the United States' economic system," Arena also said. "The FBI is committed to aggressively pursuing any company involved in antitrust crimes."

140.    Deputy Assistant Attorney General Scott Hammond, recently stated that the automotive parts cartel is "the biggest [cartel] with respect to the impact on U.S. business and consumers."

**F.    Damage to Plaintiffs and Other Automobile Dealers Caused by Defendants' Illegal Activities.**

141.    Defendants' conspiracy resulted in Defendants charging inflated prices to firms who directly purchased Automotive Lamps from them and in those purchasers raising their prices to subsequent purchasers.

142.    Having paid higher prices for components of the cars they sold to Plaintiffs and the Classes and the Automotive Lamps they sold to Plaintiffs and the Classes, firms who sold such Automotive Lamps and vehicles passed Defendants' overcharges on to Plaintiffs and the Classes.

143.    The impact of Defendants' conspiracy on Plaintiffs' businesses was substantial. Automobile dealers were substantially injured by higher prices paid for Auto Lamps and vehicles.

144.    Because, among other reasons, of the imperfect nature of competition among automobile dealers and the differentiation among dealers by brand and by location, Plaintiffs and the Classes had to and did absorb, at the very least, a significant portion of the overcharges that they paid due to Defendants' illegal activities.

145.    Plaintiffs have standing and have suffered damage compensable by indirect purchaser laws and they and members of the classes they seek to represent have sustained significant damage and injury as a result of Defendants' conspiracy.

## CLASS ACTION ALLEGATIONS

146.    Plaintiffs[1] bring this action on behalf of themselves and as a class action under Rule 23(a) and (b)(2) of the Federal Rules of Civil Procedure, seeking equitable and injunctive relief on behalf of the following class (the "Nationwide Class"):

> All automobile dealers that during the Class Period,  (a) purchased Automotive Lamps manufactured by the Defendants or any current or former subsidiary or affiliate thereof or any co-conspirator, or

---

[1] Plaintiff Dale Martens is not included in the Nationwide Class.

> (b) purchased vehicles containing Automotive Lamps manufactured by the Defendants or any current or former subsidiary, affiliate thereof or co-conspirator.

147.    Plaintiffs also bring this action on behalf of themselves and as a class action under Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure seeking damages pursuant to the law of unjust enrichment and the antitrust, unfair competition, and consumer protection laws of the states whose laws are set forth in the Second and Third Claims below, as well as the unjust enrichment laws of Missouri, Massachusetts and Illinois. The states whose laws are set forth in the Second and Third Claims below, as well as Missouri, Massachusetts, and Illinois, are collectively referred to as the "Indirect Purchaser States." These claims are brought by Plaintiffs on behalf of themselves and persons and entities in the Indirect Purchaser States listed in the Second, Third, and Fourth Claims as follows (the "Damages Class"):

> All automobile dealers, in the Indirect Purchaser States, that, during the Class Period (a) purchased Automotive Lamps manufactured by one of the Defendants or any current or former subsidiary or affiliate thereof, or any co-conspirator or (b) purchased vehicles containing Automotive Lamps manufactured by one of the Defendants or any current or former subsidiary, affiliate or co-conspirator thereof.

148.    The Nationwide Class and the Damages Class are referred to herein as the "Classes." Excluded from the Classes are Defendants, their parent companies, subsidiaries, and affiliates; any co-conspirators; federal governmental entities; instrumentalities of the federal government, states, and their subdivisions, agencies, and instrumentalities; and any judge assigned to hear this matter at either the district or appellate level and any employees or agents of those judges.

149.    Although Plaintiffs do not know the exact number of the members of the Classes, Plaintiffs believe there are at least thousands of members in each Class.

150. Common questions of law and fact exist as to all members of the Classes. This is particularly true given the nature of Defendants' conspiracy, which was generally applicable to all the members of both Classes, thereby making appropriate relief with respect to the Classes as a whole. Such questions of law and fact common to the Classes include, but are not limited to:

(a) Whether Defendants and their co-conspirators engaged in a combination and conspiracy among themselves to fix, raise, maintain or stabilize the prices of Automotive Lamps sold in the United States;

(b) The identity of the participants of the alleged conspiracy;

(c) The duration of the alleged conspiracy and the acts carried out by Defendants and their co-conspirators in furtherance of the conspiracy;

(d) Whether the alleged conspiracy violated the Sherman Act, as alleged in the First Claim for Relief;

(e) Whether the alleged conspiracy violated state antitrust and unfair competition law, and/or state consumer protection law, as alleged in the Second and Third Claims for Relief;

(f) Whether Defendants unjustly enriched themselves to the detriment of the Plaintiffs and the members of the Classes, thereby entitling Plaintiffs and the members of the Classes to disgorgement of all benefits derived by Defendants, as alleged in the Fourth Claim for Relief;

(g) Whether the conduct of Defendants and their co-conspirators, as alleged in this Complaint, caused injury to the business or property of Plaintiffs and the members of the Classes;

(h) The effect of the alleged conspiracy on the prices of Automotive Lamps sold in the United States during the Class Period;

(i) Whether the Defendants and their co-conspirators fraudulently concealed the conspiracy's existence from the Plaintiffs and the members of the Classes;

(j) The appropriate injunctive and related equitable relief for the Nationwide Class; and

(k) The appropriate class-wide measure of damages for the Damages Class.

151. Plaintiffs' claims are typical of the claims of the members of the Classes, and Plaintiffs will fairly and adequately protect the interests of the Classes. Plaintiffs and all

members of the Classes are similarly affected by Defendants' wrongful conduct because they paid artificially inflated prices for Automotive Lamps purchased indirectly from Defendants or their co-conspirators.

152.   Plaintiffs' claims arise out of the same common course of conduct giving rise to the claims of the other members of the Classes.  Plaintiffs' interests are coincident with, and not antagonistic to, those of the other members of the Classes. Plaintiffs are represented by counsel who are competent and experienced in the prosecution of antitrust and class action litigation.

153.   The questions of law and fact common to the members of the Classes predominate over any questions affecting only individual members, including legal and factual issues relating to liability and damages.

154.   Class action treatment is a superior method for the fair and efficient adjudication of the controversy, in that, among other things, such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, and expense that numerous individual actions would engender. The benefits of proceeding through the class mechanism provide injured entities with a method for obtaining redress for claims that might not be practicable to pursue individually and substantially outweigh any difficulties that may arise in the management of this class action.

155.   The prosecution of separate actions by individual members of the Classes would create a risk of inconsistent or varying adjudications, establishing incompatible standards of conduct for Defendants.

**PLAINTIFFS AND THE CLASSES SUFFERED ANTITRUST INJURY**

156.   Defendants' price-fixing conspiracy had the following effects, among others:

(a)     Price competition has been restrained or eliminated with respect to Automotive Lamps;

(b)     The prices of Automotive Lamps have been fixed, raised, maintained, or stabilized at artificially inflated levels;

(c)     Defendants charged purchasers of their Automotive Lamps inflated, fixed and stabilized prices for such Automotive Lamps;

(d)     Having paid higher prices for components of the cars they sold to Plaintiffs and the Classes and the Automotive Lamps they sold to Plaintiffs and the Classes, firms who sold Defendants' Automotive Lamps and vehicles to Plaintiffs and the Classes passed Defendants' overcharges on to them;

(e)     Defendants' overcharges passed through each level of distribution as they traveled to Plaintiffs and the Classes; and

(f)     Automobile dealers purchasing Automotive Lamps and vehicles containing Automotive Lamps have been deprived of free and open competition.

157.    During the Class Period, Plaintiffs and the members of the Classes paid supracompetitive prices for Automotive Lamps, as a result of Defendants' conspiracy.

158.    An increase in the prices of Automotive Lamps caused an increase in the price of vehicles during the Class Period.

159.    Plaintiffs and the Classes are entitled to the overcharges they paid for Automotive Lamps.

160.    The market for Automotive Lamps and the market for cars are inextricably linked and intertwined because the market for Automotive Lamps exists to serve the vehicle market. Without the vehicles, the Automotive Lamps have little to no value because they have no independent utility and must be inserted into vehicles to serve any function. Indeed, the demand for vehicles creates the demand for Automotive Lamps.

161.    Automotive Lamps are identifiable, discrete physical products that remain essentially unchanged when incorporated into a vehicle and are not altered during the manufacturing process.  As a result, Automotive Lamps follow a traceable physical chain of distribution from the Defendants to Plaintiffs and the members of the Classes, and any costs attributable to Automotive Lamps can be traced through the chain of distribution to Plaintiffs and the members of the Classes.

162.    Just as Automotive Lamps can be physically traced through the supply chain, so can their price be traced to show that changes in the prices paid by direct purchasers of Automotive Lamps affect prices paid by indirect purchasers of new motor vehicles containing Automotive Lamps.

163.    Automotive Lamps have their own part numbers, which permit them to be tracked.

164.    Automotive Lamps are pieces of sophisticated electrical equipment that are necessary to operate a vehicle.

165.    Automotive Lamps are found in every vehicle and can be removed from a finished vehicle and replaced.

166.    The Automotive Lamps subject to Defendants' conspiracy and at issue in this lawsuit only have one use: to be inserted into vehicles.  Whether Automotive Lamps are sold by themselves or in vehicles, their purpose is to be inserted into vehicles.

167.    Automotive Lamps comprise a not insignificant portion of the cost of a vehicle.

168.    The purpose of the conspiratorial conduct of the Defendants and their co-conspirators was to raise, fix, rig, or stabilize the price of Automotive Lamps and, as a direct and foreseeable result, the price of new motor vehicles containing Automotive Lamps and the price

of Automotive Lamps purchased for repair purposes.  Economists have developed techniques to isolate and understand the relationship between one "explanatory" variable and a "dependent" variable in those cases when changes in the dependent variable are explained by changes in a multitude of variables, even when all such variables may be changing simultaneously.  That analysis—called regression analysis—is commonly used in the real world and in litigation to determine the impact of a price increase on one cost in a product or service that is an assemblage of costs.  Thus, it is possible to isolate and identify only the impact of an increase in the price of Automotive Lamps on prices for new motor vehicles even though such products contain a number of other components whose prices may be changing over time.  A regression model can explain how variation in the price of Automotive Lamps affects changes in the price of new motor vehicles.  In such models, the price of Automotive Lamps would be treated as an independent or explanatory variable.  The model can isolate how changes in the price of Automotive Lamps impact the price of new motor vehicles containing Automotive Lamps while controlling for the impact of other price-determining factors.

169.    The precise amount of the overcharge impacting the prices of new motor vehicles containing Automotive Lamps can be measured and quantified.  Commonly used and well-accepted economic models can be used to measure both the extent and the amount of the supra-competitive charge passed through the chain of distribution.  Thus, the economic harm to Plaintiffs and members of the Classes can be quantified.

170.    By reason of the alleged violations of the antitrust laws, Plaintiffs and the members of the Classes have sustained injury to their businesses or property, having paid higher prices for Automotive Lamps than they would have paid in the absence of Defendants' illegal contract, combination, or conspiracy, and, as a result, have suffered damages in an amount

presently undetermined. This is an antitrust injury of the type that the antitrust laws were meant to punish and prevent and Plaintiffs' and Class members' damages are measureable.

## PLAINTIFFS' CLAIMS ARE NOT BARRED BY THE STATUTE OF LIMITATIONS

### A.    The Statute of Limitations Did Not Begin to Run Because Plaintiffs Did Not And Could Not Discover The Claims

171.    Plaintiffs repeat and reallege the allegations set forth above.

172.    Plaintiffs and the members of the Classes had no knowledge of the combination or conspiracy alleged herein, or of facts sufficient to place them on inquiry notice of the claims set forth herein, until (at the earliest) the JFTC announced its fines concerning the Automotive Lamps conspiracy in March 2013.

173.    Plaintiffs and members of the Classes did not discover, and could not have discovered through the exercise of reasonable diligence, the existence of the conspiracy alleged herein until March 2013.

174.    Plaintiffs and the members of the Classes are automobile dealers who had no direct contact or interaction with any of the Defendants in this case and had no means by which they could have discovered the combination and conspiracy described in this Complaint until the JFTC announced its fines concerning the Automotive Lamps conspiracy in March 2013.

175.    No information in the public domain was available to the Plaintiffs and the members of the Classes prior to the public announcements of the JFTC fines concerning the Automotive Lamps conspiracy that revealed sufficient information to suggest that any one of the Defendants was involved in a criminal conspiracy to price-fix and rig bids for Automotive Lamps.  Plaintiffs and the members of the Classes had no means of obtaining any facts or information concerning any aspect of Defendants' dealings with OEMs or other direct

purchasers, much less the fact that they had engaged in the combination and conspiracy alleged herein.

176.    For these reasons, the statute of limitations as to Plaintiffs' and the Classes' claims did not begin to run, and has been tolled with respect to the claims that Plaintiffs and the members of the Classes have alleged in this Complaint.

**B.    Fraudulent Concealment Tolled the Statute of Limitations**

177.    In the alternative, application of the doctrine of fraudulent concealment tolled the statute of limitations on the claims asserted herein by Plaintiffs and the Classes.  Plaintiffs and the members of the Classes did not discover, and could not discover through the exercise of reasonable diligence, the existence of the conspiracy alleged herein until the JFTC announced its fines concerning the Automotive Lamps conspiracy in March 2013.

178.    Because Defendants' agreements, understandings, and conspiracies were kept secret until March 2013, Plaintiffs and members of the Classes before that time were unaware of Defendants' unlawful conduct, and they did not know before then that they were paying supracompetitive prices for Automotive Lamps throughout the United States during the Class Period.

179.    The affirmative acts of the Defendants alleged herein, including acts in furtherance of the conspiracy, were wrongfully concealed and carried out in a manner that precluded detection.

180.    By its very nature, Defendants' anticompetitive conspiracy was inherently self-concealing.  Automotive Lamps are not exempt from antitrust regulation, and thus, before March 2013, Plaintiffs reasonably considered it to be a competitive industry. Accordingly, a

reasonable person under the circumstances would not have been alerted to begin to investigate the legitimacy of Defendants' Automotive Lamps' prices before March 2013.

181.    Plaintiffs and the members of the Classes could not have discovered the alleged contract, conspiracy, or combination at an earlier date by the exercise of reasonable diligence because of the deceptive practices and techniques of secrecy employed by the Defendants and their co-conspirators to avoid detection of, and fraudulently conceal, their contract, combination, or conspiracy.

182.    Because the alleged conspiracy was both self-concealing and affirmatively concealed by Defendants and their co-conspirators, Plaintiffs and members of the Classes had no knowledge of the alleged conspiracy, or of any facts or information that would have caused a reasonably diligent person to investigate whether a conspiracy existed, until March 2013, when the JFTC announced its fines concerning the Automotive Lamps conspiracy.

183.    As a result of Defendants' fraudulent concealment of their conspiracy, the running of any statute of limitations has been tolled with respect to any claims that Plaintiffs and the members of the Classes have alleged in this Complaint.

## FIRST CLAIM FOR RELIEF
### Violation of Section 1 of the Sherman Act
### (on behalf of Plaintiffs and the Nationwide Class)

184.    Defendants and unnamed conspirators entered into and engaged in a contract, combination, or conspiracy in unreasonable restraint of trade in violation of Section 1 of the Sherman Act (15 U.S.C. § 1).

185.    The acts done by each of the Defendants as part of, and in furtherance of, their contract, combination, or conspiracy were authorized, ordered, or done by their officers, agents, employees, or representatives while actively engaged in the management of Defendants' affairs.

186.   At least as early as July 2002, and continuing until at least the filing of this Complaint, the exact dates being unknown to Plaintiffs, Defendants and their co-conspirators entered into a continuing agreement, understanding, and conspiracy in restraint of trade to artificially fix, raise, stabilize, and control prices for Automotive Lamps, thereby creating anticompetitive effects.

187.   The anticompetitive acts were intentionally directed at the United States market for Automotive Lamps and had a substantial and foreseeable effect on interstate commerce by raising and fixing prices for Automotive Lamps throughout the United States.

188.   The conspiratorial acts and combinations have caused unreasonable restraints in the market for Automotive Lamps.

189.   As a result of Defendants' unlawful conduct, Plaintiffs and other similarly situated indirect purchasers in the Nationwide Class who purchased Automotive Lamps have been harmed by being forced to pay inflated, supracompetitive prices for Automotive Lamps and vehicles containing Automotive Lamps.

190.   In formulating and carrying out the alleged agreement, understanding, and conspiracy, Defendants and their co-conspirators did those things that they combined and conspired to do, including but not limited to the acts, practices and course of conduct set forth herein.

191.   Defendants' conspiracy had the following effects, among others:

(a)   Price competition in the market for Automotive Lamps has been restrained, suppressed, and/or eliminated in the United States;

(b)   Prices for Automotive Lamps sold by Defendants and their coconspirators have been fixed, raised, maintained, and stabilized at artificially high, non-competitive levels throughout the United States;

      (c)     Prices for vehicles purchased by Plaintiffs and the members of the Nationwide Class containing Automotive Lamps manufactured by Defendants and their coconspirators were inflated; and

      (d)     Plaintiffs and members of the Nationwide Class who purchased Automotive Lamps or vehicles containing Automotive Lamps indirectly from Defendants have been deprived of the benefits of free and open competition.

192.    Plaintiffs and members of the Nationwide Class have been injured and will continue to be injured in their business and property by paying more for Automotive Lamps and vehicles containing Automotive Lamps than they would have paid and will pay in the absence of the conspiracy.

193.    Plaintiffs and members of the Nationwide Class will continue to be subject to Defendants' price-fixing, bid-rigging, and market allocations, which will deprive Plaintiffs and members of the Nationwide Class of the benefits of free competition, including competitively-priced Automotive Lamps and vehicles containing Automotive Lamps.

194.    Plaintiffs and members of the Nationwide Class will continue to lose funds due to overpayment for Automotive Lamps and vehicles containing Automotive Lamps because they are required to purchase vehicles and Automotive Lamps to continue to operate their businesses.

195.    Plaintiffs and members of the Nationwide Class continue to purchase vehicles and Automotive Lamps, on a regular basis.

196.    Vehicles and Automotive Lamps continue to be sold at inflated and supracompetitive prices.

197.    The alleged contract, combination, or conspiracy is a *per se* violation of the federal antitrust laws.

198.    Plaintiffs and members of the Nationwide Class will be at the mercy of Defendants' unlawful conduct until the Court orders an injunction.

199.    Plaintiffs and members of the Nationwide Class are entitled to an injunction against Defendants preventing and restraining the violations alleged herein.

## SECOND CLAIM FOR RELIEF
### Violation of State Antitrust Statutes
### (on behalf of Plaintiffs and the Damages Class)

200.    Plaintiffs incorporate by reference the allegations in the preceding paragraphs.

201.    From as early as July 2002 until at least the filing of this Complaint, Defendants and their co-conspirators engaged in a continuing contract, combination, or conspiracy with respect to the sale of Automotive Lamps in unreasonable restraint of trade and commerce and in violation of the various state antitrust statutes set forth below.

202.    The contract, combination, or conspiracy consisted of an agreement among the Defendants and their co-conspirators to fix, raise, inflate, stabilize, and/or maintain artificially supracompetitive prices for Automotive Lamps, to rig bids for the sale of Automotive Lamps, and to allocate customers for Automotive Lamps in the United States.

203.    In formulating and effectuating this conspiracy, Defendants and their co-conspirators performed acts in furtherance of the combination and conspiracy, including:

> (a)    participating in meetings and conversations among themselves in the United States and elsewhere during which they agreed to price Automotive Lamps at certain levels, and otherwise to fix, increase, inflate, maintain, or stabilize effective prices paid by Plaintiffs and members of the Damages Class with respect to Automotive Lamps sold in the United States;

> (b)    allocating customers and markets for Automotive Lamps in the United States in furtherance of their agreements; and

> (c)    participating in meetings and conversations among themselves in the United States and elsewhere to implement, adhere to, and police the unlawful agreements they reached.

204.    Defendants and their co-conspirators engaged in the actions described above for the purpose of carrying out their unlawful agreements to fix, maintain, decrease, or stabilize prices and to allocate customers with respect to Automotive Lamps.

205.    Defendants' anticompetitive acts described above were knowing, willful, and constitute violations or flagrant violations of the following state antitrust statutes.

206.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the Arizona Revised Statutes, §§ 44-1401, *et seq.*

(a)    Defendants' combinations or conspiracies had the following effects: (1) Automotive Lamps price competition was restrained, suppressed, and eliminated throughout Arizona; (2) Automotive Lamps prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Arizona; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Automotive Lamps and vehicles containing Automotive Lamps.

(b)    During the Class Period, Defendants' illegal conduct substantially affected Arizona commerce.

(c)    As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)    By reason of the foregoing, Defendants entered into agreements in restraint of trade in violation of Ariz. Rev. Stat. §§ 44-1401, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all forms of relief available under Ariz. Rev. Stat. §§ 44-1401, *et seq.*

207.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the California Business and Professions Code, §§ 16700, *et seq.*

(a)      During the Class Period, Defendants and their co-conspirators entered into and engaged in a continuing unlawful trust in restraint of the trade and commerce described above in violation of Section 16720 of the California Business and Professions Code. Defendants, each of them, have acted in violation of Section 16720 to fix, raise, stabilize, and maintain prices of, and allocate markets for, Automotive Lamps at supracompetitive levels.

(b)      The aforesaid violations of Section 16720, California Business and Professions Code, consisted, without limitation, of a continuing unlawful trust and concert of action among the Defendants and their co-conspirators the substantial terms of which were to fix, raise, maintain, and stabilize the prices of, and to allocate markets for, Automotive Lamps.

(c)      For the purpose of forming and effectuating the unlawful trust, the Defendants and their co-conspirators have done those things which they combined and conspired to do, including but in no way limited to the acts, practices and course of conduct set forth above and the following: (1) Fixing, raising, stabilizing, and pegging the price of Automotive Lamps; and (2) Allocating among themselves the production of Automotive Lamps.

(d)      The combination and conspiracy alleged herein has had, *inter alia*, the following effects upon the commerce of California: (1) Price competition in the sale of Automotive Lamps has been restrained, suppressed, and/or eliminated in the State of California; (2) Prices for Automotive Lamps sold by Defendants and their co-conspirators have been fixed, raised, stabilized, and pegged at artificially high, non-competitive levels in the State of California and throughout the United States; and (3) Those who purchased Automotive Lamps or vehicles

containing Automotive Lamps manufactured by Defendants and their co-conspirators have been deprived of the benefit of free and open competition.

(e)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property in that they paid more for Automotive Lamps than they otherwise would have paid in the absence of Defendants' unlawful conduct. As a result of Defendants' violation of Section 16720 of the California Business and Professions Code, Plaintiffs and members of the Damages Class seek treble damages and their cost of suit, including a reasonable attorney's fee, pursuant to Section 16750(a) of the California Business and Professions Code.

208.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the District of Columbia Official Code §§ 28-4501, *et seq.*

(a)     Defendants' combinations or conspiracies had the following effects: (1) Automotive Lamps price competition was restrained, suppressed, and eliminated throughout the District of Columbia; (2) Automotive Lamps prices were raised, fixed, maintained, and stabilized at artificially high levels throughout the District of Columbia; (3) Plaintiffs and members of the Damages Class, including those who resided in the District of Columbia and/or purchased Automotive Lamps or vehicles in the District of Columbia, were deprived of free and open competition, including in the District of Columbia; and (4) Plaintiffs and members of the Damages Class, including those who resided in the District of Columbia and/or purchased Automotive Lamps or vehicles in the District of Columbia, paid supracompetitive, artificially inflated prices for Automotive Lamps and vehicles containing Automotive Lamps, including in the District of Columbia.

(b)     During the Class Period, Defendants' illegal conduct substantially affected District of Columbia commerce.

(c)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of District of Columbia Code Ann. §§ 28-4501, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all forms of relief available under District of Columbia Code Ann. §§ 28-4501, *et seq.*

209.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the Hawaii Revised Statutes Annotated §§ 480-1, *et seq.*

(a)     Defendants' unlawful conduct had the following effects: (1) Automotive Lamps' price competition was restrained, suppressed, and eliminated throughout Hawaii; (2) Automotive Lamps' prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Hawaii; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supracompetitive, artificially inflated prices for Automotive Lamps and vehicles containing Automotive Lamps.

(b)     During the Class Period, Defendants' illegal conduct substantially affected Hawaii commerce.

(c)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury.

60

(d)     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Hawaii Revised Statutes Annotated §§ 480-4, *et seq*.  Accordingly, Plaintiffs and members of the Damages Class seek all forms of relief available under Hawaii Revised Statutes Annotated §§ 480-4, *et seq*.

210.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the Illinois Antitrust Act, 740 Illinois Compiled Statutes 10/1, *et seq*.

(a)     Defendants' combinations or conspiracies had the following effects: (1) Automotive Lamps price competition was restrained, suppressed, and eliminated throughout Illinois; (2) Automotive Lamps prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Illinois; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Automotive Lamps and vehicles containing Automotive Lamps.

(b)     During the Class Period, Defendants' illegal conduct substantially affected Illinois commerce.

(c)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of 740 Illinois Compiled Statutes 10/1, *et seq*.  Accordingly, Plaintiffs and members of the Damages Class seek all forms of relief available under 740 Illinois Compiled Statutes 10/1, *et seq*.

211.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the Iowa Code §§ 553.1, *et seq.*

(a)    Defendants' combinations or conspiracies had the following effects: (1) Automotive Lamps price competition was restrained, suppressed, and eliminated throughout Iowa; (2) Automotive Lamps prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Iowa; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Automotive Lamps and vehicles containing Automotive Lamps.

(b)    During the Class Period, Defendants' illegal conduct substantially affected Iowa commerce.

(c)    As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)    By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Iowa Code §§ 553.1, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all forms of relief available under Iowa Code §§ 553.1, *et seq.*

212.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the Kansas Statutes Annotated, §§ 50-101, *et seq.*

(b)    Defendants' combinations or conspiracies had the following effects: (1) Automotive Lamps price competition was restrained, suppressed, and eliminated throughout Kansas; (2) Automotive Lamps prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Kansas; (3) Plaintiffs and members of the Damages Class were deprived

of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Automotive Lamps and vehicles containing Automotive Lamps.

(c)     During the Class Period, Defendants' illegal conduct substantially affected Kansas commerce.

(d)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(e)     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Kansas Stat. Ann. §§ 50-101, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all forms of relief available under Kansas Stat. Ann. §§ 50-101, *et seq*.

213.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the Maine Revised Statutes, Maine Rev. Stat. Ann. 10, §§ 1101, *et seq.*

(a)     Defendants' combinations or conspiracies had the following effects: (1) Automotive Lamps price competition was restrained, suppressed, and eliminated throughout Maine; (2) Automotive Lamps prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Maine; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition: and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Automotive Lamps and vehicles containing Automotive Lamps.

(b)     During the Class Period, Defendants' illegal conduct substantially affected Maine commerce.

(c)      As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)      By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Maine Rev. Stat. Ann. 10, §§ 1101, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Maine Rev. Stat. Ann. 10. §§ 1101, *et seq.*

214.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the Michigan Compiled Laws Annotated §§ 445.771, *et seq.*

(a)      Defendants' combinations or conspiracies had the following effects: (1) Automotive Lamps price competition was restrained, suppressed, and eliminated throughout Michigan; (2) Automotive Lamps prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Michigan; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Automotive Lamps and vehicles containing Automotive Lamps.

(b)      During the Class Period, Defendants' illegal conduct substantially affected Michigan commerce.

(c)      As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)      By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Michigan Comp. Laws Ann. §§ 445.771, *et seq.* Accordingly, Plaintiffs

64

and members of the Damages Class seek all relief available under Michigan Comp. Laws Ann. §§ 445.771, *et seq.*

215. Defendants have entered into an unlawful agreement in unreasonable restraint of trade in violation of the Minnesota Statutes Annotated §§ 325D.49, *et seq.*

(a) Defendants' combinations or conspiracies had the following effects: (1) Automotive Lamps price competition was restrained, suppressed, and eliminated throughout Minnesota; (2) Automotive Lamps prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Minnesota; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Automotive Lamps and vehicles containing Automotive Lamps.

(b) During the Class Period Defendants' illegal conduct substantially affected Minnesota commerce.

(c) As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d) By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Minnesota Stat. §§ 325D.49, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Minnesota Stat. §§ 325D.49, *et seq.*

216. Defendants have entered into an unlawful agreement in restraint of trade in violation of the Mississippi Code Annotated §§ 75-21-1, *et seq.*

(a) Defendants' combinations or conspiracies had the following effects: (1) Automotive Lamps price competition was restrained, suppressed, and eliminated throughout

Mississippi; (2) Automotive Lamps prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Mississippi; (3) Plaintiffs and members of the Damages Class, including those who resided in Mississippi and/or purchased Automotive Lamps or vehicles in Mississippi were deprived of free and open competition, including in Mississippi: and (4) Plaintiffs and members of the Damages Class, including those who resided in Mississippi and/or purchased Automotive Lamps or vehicles in Mississippi paid supracompetitive, artificially inflated prices for Automotive Lamps, including in Mississippi.

(b)     During the Class Period, Defendants' illegal conduct substantially affected Mississippi commerce.

(c)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Mississippi Code Ann. § 75-21-1, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Mississippi Code Ann. § 75-21-1, *et seq.*

217.     Defendants have entered into an unlawful agreement in restraint of trade in violation of the Nebraska Revised Statutes §§ 59-801, *et seq.*

(a)     Defendants' combinations or conspiracies had the following effects: (1) Automotive Lamps price competition was restrained, suppressed, and eliminated throughout Nebraska; (2) Automotive Lamps prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Nebraska; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages

66

Class paid supracompetitive, artificially inflated prices for Automotive Lamps and vehicles containing Automotive Lamps.

(b)     During the Class Period, Defendants' illegal conduct substantially affected Nebraska commerce.

(c)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Nebraska Revised Statutes §§ 59-801, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Nebraska Revised Statutes §§ 59-801, *et seq.*

218.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the Nevada Revised Statutes Annotated §§ 598A.010, *et seq.*

(a)     Defendants' combinations or conspiracies had the following effects: (1) Automotive Lamps price competition was restrained, suppressed, and eliminated throughout Nevada; (2) Automotive Lamps prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Nevada; (3) Plaintiffs and members of the Damages Class, including those who resided in Nevada and/or purchased Automotive Lamps or vehicles in Nevada, were deprived of free and open competition including in Nevada; and (4) Plaintiffs and members of the Damages Class, including those who resided in Nevada and/or purchased Automotive Lamps or vehicles in Nevada, paid supracompetitive, artificially inflated prices for Automotive Lamps and vehicles containing Automotive Lamps, including in Nevada.

(b)     During the Class Period, Defendants' illegal conduct substantially affected Nevada commerce.

(c)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Nevada Rev. Stat. Ann. §§ 598A.060, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Nevada Rev. Stat. Ann. §§ 598A.010, *et seq.*

219.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the New Hampshire Revised Statutes §§ 356:1, *et seq.*

(a)     Defendants' combinations or conspiracies had the following effects: (1) Automotive Lamps price competition was restrained, suppressed, and eliminated throughout New Hampshire; (2) Automotive Lamps prices were raised, fixed, maintained, and stabilized at artificially high levels throughout New Hampshire; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Automotive Lamps and vehicles containing Automotive Lamps.

(b)     During the Class Period Defendants' illegal conduct substantially affected New Hampshire commerce.

(c)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of New Hampshire Revised Statutes §§ 356:1, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all relief available under New Hampshire Revised Statutes §§ 356:1, *et seq.*

220.     Defendants have entered into an unlawful agreement in restraint of trade in violation of the New Mexico Statutes Annotated §§ 57-1-1, *et seq.*

(a)     Defendants' combinations or conspiracies had the following effects: (1) Automotive Lamps price competition was restrained, suppressed, and eliminated throughout New Mexico; (2) Automotive Lamps prices were raised, fixed, maintained, and stabilized at artificially high levels throughout New Mexico; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Automotive Lamps and vehicles containing Automotive Lamps.

(b)     During the Class Period, Defendants' illegal conduct substantially affected New Mexico commerce.

(c)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of New Mexico Stat. Ann. §§ 57-1-1, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all relief available under New Mexico Stat. Ann.§§ 57-1-1, *et seq.*

221.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the New York General Business Laws §§ 340, *et seq.*

(a)    Defendants' combinations or conspiracies had the following effects: (1) Automotive Lamps price competition was restrained, suppressed, and eliminated throughout New York; (2) Automotive Lamps prices were raised, fixed, maintained, and stabilized at artificially high levels throughout New York; (3) Plaintiffs and members of the Damages Class, including those who resided in New York and/or purchased Automotive Lamps or vehicles in New York, were deprived of free and open competition, including in New York; and (4) Plaintiffs and members of the Damages Class, including those who resided in New York, paid supracompetitive, artificially inflated prices for Automotive Lamps when they purchased, including in New York, Automotive Lamps or vehicles containing Automotive Lamps, or purchased, including in New York, Automotive Lamps or vehicles that were otherwise of lower quality, than would have been absent the conspirators' illegal acts, or were unable to purchase Automotive Lamps or vehicles that they would have otherwise have purchased absent the illegal conduct.

(b)    During the Class Period, Defendants' illegal conduct substantially affected New York commerce.

(c)    As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)    By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of the New York Donnelly Act, §§ 340, *et seq.* The conduct set forth above

70

is a per se violation of the Act. Accordingly, Plaintiffs and members of the Damages Class seek all relief available under New York Gen. Bus. Law §§ 340, *et seq.*

222.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the North Carolina General Statutes §§ 75-1, *et seq.*

(a)    Defendants' combinations or conspiracies had the following effects: (1) Automotive Lamps price competition was restrained, suppressed, and eliminated throughout North Carolina; (2) Automotive Lamps prices were raised, fixed, maintained, and stabilized at artificially high levels throughout North Carolina; (3) Plaintiffs and members of the Damages Class, including those who resided in North Carolina and/or purchased Automotive Lamps or vehicles in North Carolina, were deprived of free and open competition, including in North Carolina; and (4) Plaintiffs and members of the Damages Class, including those who resided in North Carolina and/or purchased Automotive Lamps or vehicles in North Carolina, paid supracompetitive, artificially inflated prices for Automotive Lamps and vehicles including in North Carolina.

(b)    During the Class Period, Defendants' illegal conduct substantially affected North Carolina commerce. As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(c)    By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of North Carolina Gen. Stat. §§ 75-1, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all relief available under North Carolina Gen. Stat. §§ 75-1, *et seq.*

223.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the North Dakota Century Code §§ 51-08.1-01, *et seq.*

(a)    Defendants' combinations or conspiracies had the following effects: (1) Automotive Lamps price competition was restrained, suppressed, and eliminated throughout North Dakota; (2) Automotive Lamps prices were raised, fixed, maintained, and stabilized at artificially high levels throughout North Dakota; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Automotive Lamps and vehicles containing Automotive Lamps.

(b)    During the Class Period, Defendants' illegal conduct had a substantial effect on North Dakota commerce.

(c)    As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)    By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of North Dakota Cent. Code §§ 51-08.1-01, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all relief available under North Dakota Cent. Code §§ 51-08.1-01, *et seq.*

224.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the Oregon Revised Statutes §§ 646.705, *et seq.*

(a) Defendants' combinations or conspiracies had the following effects: (1) Automotive Lamps price competition was restrained, suppressed, and eliminated throughout Oregon; (2) Automotive Lamps prices were raised, fixed, maintained, and stabilized at

artificially high levels throughout Oregon; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Automotive Lamps and vehicles containing Automotive Lamps.

(b)   During the Class Period Defendants' illegal conduct had a substantial effect on Oregon commerce.

(c)   As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)   By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Oregon Revised Statutes §§ 646.705, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Oregon Revised Statutes §§ 646.705, *et seq.*

225.   Defendants have entered into an unlawful agreement in restraint of trade in violation of the South Dakota Codified Laws §§ 37-1-3.1., *et seq.*

(a)   Defendants' combinations or conspiracies had the following effects: (1) Automotive Lamps price competition was restrained, suppressed, and eliminated throughout South Dakota; (2) Automotive Lamps prices were raised, fixed, maintained, and stabilized at artificially high levels throughout South Dakota; (3) Plaintiffs and members of the Damages Class, including those who resided in South Dakota and/or purchased Automotive Lamps or vehicles in South Dakota, were deprived of free and open competition including in South Dakota; and (4) Plaintiffs and members of the Damages Class, including those who resided in South Dakota and/or purchased vehicles or Automotive Lamps in South Dakota, paid

supracompetitive, artificially inflated prices for Automotive Lamps and vehicles containing Automotive Lamps including in South Dakota.

(b)      During the Class Period, Defendants' illegal conduct had a substantial effect on South Dakota commerce.

(c)      As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)      By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of South Dakota Codified Laws Ann. §§ 37-1, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all relief available under South Dakota Codified Laws Ann. §§ 37-1, *et seq.*

226.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the Tennessee Code Annotated §§ 47-25-101, *et seq.*

(a)      Defendants' combinations or conspiracies had the following effects: (1) Automotive Lamps price competition was restrained, suppressed, and eliminated throughout Tennessee; (2) Automotive Lamps prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Tennessee; (3) Plaintiffs and members of the Damages Class, including those who resided in Tennessee and/or purchased Automotive Lamps or vehicles in Tennessee, were deprived of free and open competition including in Tennessee; and (4) Plaintiffs and members of the Damages Class, including those who resided in Tennessee, and/or purchased Automotive Lamps or vehicles in Tennessee, paid supracompetitive, artificially inflated prices for Automotive Lamps and vehicles containing Automotive Lamps including in Tennessee.

(b)      During the Class Period, Defendants' illegal conduct had a substantial effect on Tennessee commerce. As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(c)      By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Tennessee Code Ann. §§ 47-25-101, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Tennessee Code Ann. §§ 47-25-101, *et seq.*

227.      Defendants have entered into an unlawful agreement in restraint of trade in violation of the Utah Code Annotated §§ 76-10-911, *et seq.*

(a)      Defendants' combinations or conspiracies had the following effects: (1) Automotive Lamps price competition was restrained, suppressed, and eliminated throughout Utah; (2) Automotive Lamps prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Utah; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Automotive Lamps and vehicles containing Automotive Lamps.

(b)      During the Class Period, Defendants' illegal conduct had a substantial effect on Utah commerce.

(c)      As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Utah Code Annotated §§ 76-10-911, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Utah Code Annotated §§ 76-10-911, *et seq.*

228.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the 9 Vermont Stat. Ann. §§ 2451, *et seq.*

(a)     Defendants' combinations or conspiracies had the following effects: (1) Automotive Lamps price competition was restrained, suppressed, and eliminated throughout Vermont; (2) Automotive Lamps prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Vermont; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Automotive Lamps and vehicles containing Automotive Lamps.

(b)     During the Class Period Defendants' illegal conduct had a substantial effect on Vermont commerce.

(c)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of 9 Vermont Stat. Ann. §§ 2451, *et seq.* Plaintiffs are entitled to relief pursuant to 9 Vermont Stat. Ann. § 2465 and any other applicable authority.  Accordingly, Plaintiffs and members of the Damages Class seek all relief available under 9 Vermont Stat. Ann. §§ 2451, *et seq.*

229.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the West Virginia Code §§ 47-18-1, *et seq.*

(a)     Defendants' combinations or conspiracies had the following effects: (1) Automotive Lamps price competition was restrained, suppressed, and eliminated throughout West Virginia; (2) Automotive Lamps prices were raised, fixed, maintained, and stabilized at artificially high levels throughout West Virginia; (3) Plaintiffs and members of the Damages Class, including those who resided in West Virginia and/or purchased Automotive Lamps or vehicles in West Virginia, were deprived of free and open competition including in West Virginia; and (4) Plaintiffs and members of the Damages Class, including those who resided in West Virginia and/or purchased vehicles or Automotive Lamps in West Virginia, paid supracompetitive, artificially inflated prices for Automotive Lamps and vehicles containing Automotive Lamps including in West Virginia.

(b)     During the Class Period, Defendants' illegal conduct had a substantial effect on West Virginia commerce.

(c)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of West Virginia §§ 47-18-1, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all relief available under West Virginia §§ 47-18-1, *et seq.*

230.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the Wisconsin Statutes §§ 133.01, *et seq.*

77

(a)     Defendants' combinations or conspiracies had the following effects: (1) Automotive Lamps price competition was restrained, suppressed, and eliminated throughout Wisconsin; (2) Automotive Lamps prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Wisconsin; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Automotive Lamps and vehicles containing Automotive Lamps.

(b)     During the Class Period Defendants' illegal conduct had a substantial effect on Wisconsin commerce.

(c)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Wisconsin Stat. §§ 133.01, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Wisconsin Stat. §§ 133.01, *et seq.*

231.    Plaintiffs and members of the Damages Class in each of the above states have been injured in their business and property by reason of Defendants' unlawful combination, contract, conspiracy, and agreement. Plaintiffs and members of the Damages Class have paid more for Automotive Lamps and vehicles containing Automotive Lamps than they otherwise would have paid in the absence of Defendants' unlawful conduct. This injury is of the type the antitrust laws of the above states were designed to prevent and flows from that which makes Defendants' conduct unlawful.

232.     In addition, Defendants have profited significantly from the aforesaid conspiracy. Defendants' profits derived from their anticompetitive conduct come at the expense and detriment of the Plaintiffs and the members of the Damages Class.

233.     Accordingly, Plaintiffs and the members of the Damages Class in each of the above jurisdictions seek damages (including statutory damages where applicable), to be trebled or otherwise increased as permitted by a particular jurisdiction's antitrust law, and costs of suit, including reasonable attorneys' fees, to the extent permitted by the above state laws.

**THIRD CLAIM FOR RELIEF**
**Violation of State Consumer Protection Statutes**
**on behalf of Plaintiffs and the Damages Class**

234.     Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

235.     Defendants knowingly engaged in unlawful, unfair competition or unfair, unconscionable, deceptive, or fraudulent acts or practices in violation of the state consumer protection and unfair competition statutes listed below.

236.     Defendants have knowingly entered into an unlawful agreement in restraint of trade in violation of the Arkansas Code Annotated, § 4-88-101.

(a)     Defendants knowingly agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling, and/or maintaining at non-competitive and artificially inflated levels, the prices at which Automotive Lamps were sold, distributed, or obtained in Arkansas and took efforts to conceal their agreements from Plaintiffs and members of the Damages Class.

(b)     The aforementioned conduct on the part of the Defendants constituted "unconscionable" and "deceptive" acts or practices in violation of Arkansas Code Annotated, § 4-88-107(a)(10).

(c)     Defendants' unlawful conduct had the following effects: (1) Automotive Lamps price competition was restrained, suppressed, and eliminated throughout Arkansas; (2) Automotive Lamps prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Arkansas; (3) Plaintiffs and the members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and the members of the Damages Class paid supracompetitive, artificially inflated prices for Automotive Lamps and vehicles containing Automotive Lamps.

(d)     During the Class Period, Defendants' illegal conduct substantially affected Arkansas commerce and consumers.

(e)     As a direct and proximate result of the unlawful conduct of the Defendants, Plaintiffs and the members of the Damages Class have been injured in their business and property and are threatened with further injury.

(f)     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Arkansas Code Annotated, § 4-88-107(a)(10) and, accordingly, Plaintiffs and the members of the Damages Class seek all relief available under that statute.

237.     Defendants have engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of California Business and Professions Code § 17200, *et seq.*

(a)     During the Class Period, Defendants marketed, sold, or distributed Automotive Lamps in California, and committed and continue to commit acts of unfair competition, as

80

defined by Sections 17200, *et seq.* of the California Business and Professions Code, by engaging in the acts and practices specified above.

(b)     During the Class Period, Defendants' illegal conduct substantially affected California commerce and consumers.

(c)     This claim is instituted pursuant to Sections 17203 and 17204 of the California Business and Professions Code, to obtain restitution from these Defendants for acts, as alleged herein, that violated Section 17200 of the California Business and Professions Code, commonly known as the Unfair Competition Law.

(d)     The Defendants' conduct as alleged herein violated Section 17200. The acts, omissions, misrepresentations, practices, and non-disclosures of Defendants, as alleged herein, constituted a common, continuous, and continuing course of conduct of unfair competition by means of unfair, unlawful, and/or fraudulent business acts or practices within the meaning of California Business and Professions Code, Section 17200, *et seq.,* including, but not limited to, the following: (1) the violations of Section 1 of the Sherman Act, as set forth above; (2) the violations of Section 16720, *et seq.,* of the California Business and Professions Code, set forth above;

(e)     Defendants' acts, omissions, misrepresentations, practices, and nondisclosures, as described above, whether or not in violation of Section 16720, *et seq.,* of the California Business and Professions Code, and whether or not concerted or independent acts, are otherwise unfair, unconscionable, unlawful or fraudulent;

(f)     Defendants' acts or practices are unfair to purchasers of Automotive Lamps (or vehicles containing them) in the State of California within the meaning of Section 17200, California Business and Professions Code; and

81

(g)     Defendants' unlawful conduct had the following effects: (1) Automotive Lamps price competition was restrained, suppressed, and eliminated throughout California; (2) Automotive Lamps prices were raised, fixed, maintained, and stabilized at artificially high levels throughout California; (3) Plaintiffs and members of the Damages Class, including those who resided in California and/ or purchased Automotive Lamps or vehicles in California, were deprived of free and open competition, including in California; and (4) Plaintiffs and members of the Damages Class, including those who resided in California and/or purchased Automotive Lamps or vehicles in California, paid supracompetitive, artificially inflated prices for Automotive Lamps and vehicles containing Automotive Lamps, including in California.

(h)     Defendants' acts and practices are unlawful, fraudulent or deceptive within the meaning of Section 17200 of the California Business and Professions Code.

(i)     The illegal conduct alleged herein is continuing and there is no indication that Defendants will not continue such activity into the future.

(j)     The unlawful, fraudulent, deceptive, and unfair business practices of Defendants, and each of them, as described above, have caused and continue to cause Plaintiffs and the members of the Damages Class to pay supracompetitive and artificially-inflated prices for Automotive Lamps (or vehicles containing them). Plaintiffs and the members of the Damages Class suffered injury in fact and lost money or property as a result of such unfair competition.

(k)     As alleged in this Complaint, Defendants and their co-conspirators have been unjustly enriched as a result of their wrongful conduct and by Defendants' unfair competition. Plaintiffs and the members of the Damages Class are accordingly entitled to equitable relief including restitution and/or disgorgement of all revenues, earnings, profits, compensation, and

benefits that may have been obtained by Defendants as a result of such business practices, pursuant to the California Business and Professions Code, Sections 17203 and 17204.

238. Defendants have engaged in unfair competition or unlawful, unfair, unconscionable, or deceptive acts or practices in violation of District of Columbia Code § 28-3901, *et seq.*

(a) Defendants agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling and/or maintaining, at artificial and/or non-competitive levels, the prices at which Automotive Lamps were sold, distributed, or obtained in the District of Columbia.

(b) The foregoing conduct constitutes "unlawful trade practices," within the meaning of D.C. Code § 28-3904.

(c) During the Class Period, Defendants' illegal conduct substantially affected District of Columbia commerce and consumers.

(d) Plaintiffs were not aware of Defendants' price-fixing conspiracy and were therefore unaware that they were being unfairly and illegally overcharged. There was a gross disparity of bargaining power between the parties with respect to the price charged by Defendants for Automotive Lamps. Defendants had the sole power to set that price and Plaintiffs had no power to negotiate a lower price.

(e) Moreover, Plaintiffs lacked any meaningful choice in purchasing Automotive Lamps because they were unaware of the unlawful overcharge and because they had to purchase Automotive Lamps to be able to operate their vehicles.

(f) Defendants' conduct with regard to sales of Automotive Lamps, including their illegal conspiracy to secretly fix the price of Automotive Lamps at supracompetitive levels and

overcharge purchasers, was substantively unconscionable because it was one-sided and unfairly benefited Defendants at the expense of Plaintiffs and the public.  Defendants took grossly unfair advantage of Plaintiffs.

(g)     Defendants' unlawful conduct had the following effects: (1) Automotive Lamps price competition was restrained, suppressed, and eliminated throughout the District of Columbia; (2) Automotive Lamps prices were raised, fixed, maintained, and stabilized at artificially high levels throughout the District of Columbia; (3) Plaintiffs and the Damages Class were deprived of free and open competition; and (4) Plaintiffs and the Damages Class paid supracompetitive, artificially inflated prices for Automotive Lamps and vehicles containing Automotive Lamps.

(h)     The aforementioned conduct on the part of the Defendants constituted "unconscionable trade practices," in that such conduct, *inter alia*, resulted in a gross disparity between the value received by Plaintiffs and the members of the Damages Class and the prices paid by them for Automotive Lamps, due to the inflated prices paid by Plaintiffs and Class members for vehicles and Automotive Lamps.

(i)     As a direct and proximate result of the Defendants' conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of District of Columbia Code § 28-3901, *et seq.,* and, accordingly, Plaintiffs and members of the Damages Class seek all relief available under that statute.

239.    Defendants have engaged in unfair competition or unlawful, unfair, unconscionable, or deceptive acts or practices in violation of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201, *et seq.*

(a)    Defendants' unlawful conduct had the following effects: (1) Automotive Lamps price competition was restrained, suppressed, and eliminated throughout Florida; (2) Automotive Lamps prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Florida; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Automotive Lamps; and (5) Reasonable purchasers in Florida were deceived into believing that they were paying competitive prices for their vehicles and Automotive Lamps.

(b)    During the Class Period, Defendants' illegal conduct substantially affected Florida commerce and consumers.

(c)    As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)    Defendants have engaged in unfair competition or unlawful, unfair or deceptive acts or practices in violation of Florida Stat. § 501.201, *et seq.,* and, accordingly, Plaintiffs and members of the Damages Class seek all relief available under that statute.

240.    Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the New Mexico Stat. § 57-12-1, *et seq.*

(a)    Defendants agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling and/or maintaining at non-competitive and artificially inflated

levels, the prices at which Automotive Lamps were sold, distributed, or obtained in New Mexico and took efforts to conceal their agreements from Plaintiffs and members of the Damages Class.

(b)     Plaintiffs were not aware of Defendants' price-fixing conspiracy and were therefore unaware that they were being unfairly and illegally overcharged.  There was a gross disparity of bargaining power between the parties with respect to the price charged by Defendants for Automotive Lamps.  Defendants had the sole power to set that price and Plaintiffs had no power to negotiate a lower price.  Moreover, Plaintiffs lacked any meaningful choice in purchasing Automotive Lamps because they were unaware of the unlawful overcharge and because they had to purchase Automotive Lamps in order to be able to operate their vehicles. Defendants' conduct with regard to sales of Automotive Lamps, including their illegal conspiracy to secretly fix the price of Automotive Lamps at supracompetitive levels and overcharge consumers, was substantively unconscionable because it was one-sided and unfairly benefited Defendants at the expense of Plaintiffs and the public.  Defendants took grossly unfair advantage of Plaintiffs.

(c)     The aforementioned conduct on the part of the Defendants constituted "unconscionable trade practices," in violation of N.M.S.A. § 57-12-3, in that such conduct, *inter alia*, resulted in a gross disparity between the value received by Plaintiffs and the members of the Damages Class and the prices paid by them for Automotive Lamps as set forth in N.M.S.A. § 57-12-2E, due to the inflated prices paid by Plaintiffs and Class members for vehicles and Automotive Lamps.

(d)     Defendants' unlawful conduct had the following effects: (1) Automotive Lamps price competition was restrained, suppressed, and eliminated throughout New Mexico; (2) Automotive Lamps prices were raised, fixed, maintained, and stabilized at artificially high levels

throughout New Mexico; (3) Plaintiffs and the members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and the members of the Damages Class paid supracompetitive, artificially inflated prices for Automotive Lamps and vehicles containing Automotive Lamps.

(e)     During the Class Period, Defendants' illegal conduct substantially affected New Mexico commerce and consumers.

(f)     As a direct and proximate result of the unlawful conduct of the Defendants, Plaintiffs and the members of the Damages Class have been injured in their business and property and are threatened with further injury.

(g)     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of New Mexico Stat. § 57-12-1, *et seq.,* and, accordingly, Plaintiffs and the members of the Damages Class seek all relief available under that statute.

241.     Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of N.Y. Gen. Bus. Law § 349, *et seq.*

(a)     Defendants agree to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling, and/or maintaining, at artificial and non-competitive levels, the prices at which Automotive Lamps were sold, distributed, or obtained in New York and took efforts to conceal their agreements from Plaintiffs and members of the Damages Class.

(b)     Defendants deceptively led purchasers, such as Plaintiffs and Class members, to believe that the Automotive Lamps they had purchased as replacements and inside vehicles had been sold at legal competitive prices, when they had in fact been sold at collusively obtained inflated prices, that were passed on to them.

(c)     The conduct of the Defendants described herein constitutes consumer-oriented deceptive acts or practices within the meaning of N.Y. Gen. Bus. Law § 349, which resulted in injuries to purchasers and broad adverse impact on the public at large, and harmed the public interest of New York State in an honest marketplace in which economic activity is conducted in a competitive manner.

(d)     Because of Defendants' unlawful trade practices in the State of New York, New York purchasers who indirectly purchased Automotive Lamps were misled to believe that they were paying a fair price for Automotive Lamps or the price increases for Automotive Lamps were for valid business reasons; and similarly situated purchasers were potentially affected by Defendants' conspiracy.

(e)     Defendants' unlawful conduct had the following effects: (1) Automotive Lamps price competition was restrained, suppressed, and eliminated throughout New York; (2) Automotive Lamps prices were raised, fixed, maintained, and stabilized at artificially high levels throughout New York; (3) Plaintiffs and members of the Damages Class, who resided in and/or made purchases of vehicles or Automotive Lamps in New York, were deprived of free and open competition and were subject to Defendants' deceptive practices in New York; and (4) Plaintiffs and members of the Damages Class, who resided in and/or made purchases of vehicles and Automotive Lamps in New York, paid supracompetitive, artificially inflated prices for Automotive Lamps and vehicles containing Automotive Lamps, and were subjected to Defendants' deceptive practices.

(f)     Defendants knew that their unlawful trade practices with respect to pricing Automotive Lamps would have an impact on all purchasers in New York and not just the Defendants' direct customers.

(g)     Defendants knew that their unlawful trade practices with respect to pricing Automotive Lamps would have a broad impact, causing class members who indirectly purchased Automotive Lamps to be injured by paying more for Automotive Lamps than they would have paid in the absence of Defendants' unlawful trade acts and practices.

(h)     During the Class Period, Defendants marketed, sold, or distributed Automotive Lamps in New York and their illegal conduct substantially affected New York commerce and New York purchasers.

(i)     During the Class Period, each of the Defendants named herein, directly, or indirectly and through affiliates they dominated and controlled manufactured, sold, and/or distributed Automotive Lamps in New York.

(j)     Plaintiffs and members of the Damages Class seek all relief available pursuant to N.Y. Gen. Bus. Law § 349(h).

242.     Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of North Carolina Gen. Stat. § 75-1.1, *et seq.*

(a)     Defendants agree to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling, and/or maintaining, at artificial and non-competitive levels, the prices at which Automotive Lamps were sold, distributed, or obtained in North Carolina and took efforts to conceal their agreements from Plaintiffs and members of the Damages Class.

(b)     The conduct of the Defendants described herein constitutes consumer-oriented deceptive acts or practices within the meaning of North Carolina law, which resulted in injuries to purchasers of Automotive Lamps and vehicles, and broad adverse impact on the public at large, and harmed the public interest of North Carolina purchasers in an honest marketplace in which economic activity is conducted in a competitive manner.

(c)     Defendants' unlawful conduct had the following effects upon purchasers of Automotive Lamps in North Carolina: (1) Automotive Lamps price competition was restrained, suppressed, and eliminated throughout North Carolina; (2) Automotive Lamps prices were raised, fixed, maintained, and stabilized at artificially high levels throughout North Carolina; (3) Plaintiffs and members of the Damages Class, including those who resided in North Carolina and/or purchased Automotive Lamps or vehicles in North Carolina, were deprived of free and open competition including in North Carolina; and (4) Plaintiffs and members of the Damages Class, including those who resided in North Carolina and/or purchased Automotive Lamps or vehicles in North Carolina, paid supracompetitive, artificially inflated prices for Automotive Lamps and vehicles containing Automotive Lamps including in North Carolina.

(d)     During the Class Period, Defendants' illegal conduct substantially affected North Carolina commerce and purchasers of Automotive Lamps and vehicles.

(e)     Defendants' price-fixing conspiracy could not have succeeded absent deceptive conduct by Defendants to cover up their illegal acts.  Secrecy was integral to the formation, implementation and maintenance of Defendants' price-fixing conspiracy.  Defendants committed inherently deceptive and self-concealing actions, of which Plaintiffs could not possibly have been aware.  Moreover, Defendants deceptively concealed their unlawful activities by mutually agreeing not to divulge the existence of the conspiracy to outsiders and conducting meetings and conversations in secret.

(f)     During the Class Period, each of the Defendants named herein, directly, or indirectly and through affiliates they dominated and controlled, manufactured, marketed, sold and/or distributed Automotive Lamps in North Carolina.

(g)     Plaintiffs and members of the Damages Class seek actual damages for their injuries caused by these violations in an amount to be determined at trial and are threatened with further injury. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of North Carolina Gen. Stat. § 75-1.1, *et seq.*, and, accordingly, Plaintiffs and members of the Damages Class seek all relief available under that statute.

243.     Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of South Carolina Unfair Trade Practices Act, S.C. Code Ann. §§ 39-5-10, *et seq.*

(a)     Defendants' combinations or conspiracies had the following effects: (1) Automotive Lamps price competition was restrained, suppressed, and eliminated throughout South Carolina; (2) Automotive Lamps prices were raised, fixed, maintained, and stabilized at artificially high levels throughout South Carolina; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Automotive Lamps and vehicles containing Automotive Lamps.

(b)     During the Class Period, Defendants' illegal conduct had a substantial effect on South Carolina commerce.

(c)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of S.C. Code Ann. §§ 39-5-10, *et seq.,* and, accordingly, Plaintiffs and the members of the Damages Class seek all relief available under that statute.

244.     Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of 9 Vermont § 2451, *et seq.*

(a)     Defendants agreed to, and did in fact, act in restraint of trade or commerce in a market that includes Vermont, by affecting, fixing, controlling, and/or maintaining, at artificial and non-competitive levels, the prices at which Automotive Lamps were sold, distributed, or obtained in Vermont.

(b)     Defendants deliberately failed to disclose material facts to Plaintiffs and members of the Damages Class concerning Defendants' unlawful activities and artificially inflated prices for Automotive Lamps.  Defendants owed a duty to disclose such facts, and Defendants breached that duty by their silence.  Defendants misrepresented to all purchasers during the Class Period that Defendants' Automotive Lamps prices were competitive and fair.

(c)     Defendants' unlawful conduct had the following effects: (1) Automotive Lamps price competition was restrained, suppressed, and eliminated throughout Vermont; (2) Automotive Lamps prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Vermont; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for Automotive Lamps and vehicles containing Automotive Lamps.

(d)     As a direct and proximate result of the Defendants' violations of law, Plaintiffs and members of the Damages Class suffered an ascertainable loss of money or property as a result of Defendants' use or employment of unconscionable and deceptive commercial practices as set forth above.  That loss was caused by Defendants' willful and deceptive conduct, as described herein.

(e)     Defendants' deception, including their affirmative misrepresentations and omissions concerning the price of Automotive Lamps, likely misled all purchasers acting reasonably under the circumstances to believe that they were purchasing Automotive Lamps at prices set by a free and fair market.   Defendants' misleading conduct and unconscionable activities constitute unfair competition or unfair or deceptive acts or practices in violation of 9 Vermont § 2451, *et seq.*, and, accordingly, Plaintiffs and members of the Damages Class seek all relief available under that statute.

### FOURTH CLAIM FOR RELIEF
### Unjust Enrichment on behalf of
### Plaintiffs and the Damages Class

245.     Plaintiffs incorporate by reference the allegations in the preceding paragraphs.

246.     Plaintiffs bring this claim under the laws of all states listed in the Second and Third Claims for Relief, *supra*.   Plaintiffs also bring this claim under the laws of Missouri, Massachusetts, and Illinois on behalf of the Plaintiffs who have their primary places of business in those three states and the class members in those three states.

247.     As a result of their unlawful conduct described above, Defendants have and will continue to be unjustly enriched. Defendants have been unjustly enriched by the receipt of, at a minimum, unlawfully inflated prices and unlawful profits on sales of Automotive Lamps.

248.     Defendants have benefited from their unlawful acts and it would be inequitable for Defendants to be permitted to retain any of the ill-gotten gains resulting from the overpayments made by Plaintiffs or the members of the Damages Class for Automotive Lamps.

249.     Plaintiffs and the members of the Damages Class are entitled to the amount of Defendants' ill-gotten gains resulting from their unlawful, unjust, and inequitable conduct. Plaintiffs and the members of the Damages Class are entitled to the establishment of a

constructive trust consisting of all ill-gotten gains from which Plaintiffs and the members of the Damages Class may make claims on a pro rata basis.

250.    Pursuit of any remedies against the firms from whom Plaintiffs and the Class members purchased vehicles containing Automotive Lamps and Automotive Lamps subject to Defendants' conspiracy would have been futile, given that those firms did not take part in Defendants' conspiracy.

## PRAYER FOR RELIEF

Accordingly, Plaintiffs respectfully request that:

A.    The Court determine that this action may be maintained as a class action under Rule 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure, and direct that reasonable notice of this action, as provided by Rule 23(c)(2) of the Federal Rules of Civil Procedure, be given to each and every member of the Classes;

B.    The unlawful conduct, contract, conspiracy, or combination alleged herein be adjudged and decreed:

(a)    An unreasonable restraint of trade or commerce in violation of Section 1 of the Sherman Act;

(b)    A *per se* violation of Section 1 of the Sherman Act;

(c)    An unlawful combination, trust, agreement, understanding, and/or concert of action in violation of the state antitrust and unfair competition and consumer protection laws as set forth herein; and

(d)    Acts of unjust enrichment by Defendants as set forth herein.

C.    Plaintiffs and the members of the Damages Class recover damages, to the maximum extent allowed under such laws, and that a joint and several judgment in favor of

Plaintiffs and the members of the Damages Class be entered against Defendants in an amount to be trebled to the extent such laws permit;

D.     Plaintiffs and the members of the Damages Class recover damages, to the maximum extent allowed by such laws, in the form of restitution and/or disgorgement of profits unlawfully gained from them;

E.     Defendants, their affiliates, successors, transferees, assignees and other officers, directors, partners, agents, and employees thereof, and all other persons acting or claiming to act on their behalf or in concert with them, be permanently enjoined and restrained from in any manner continuing, maintaining, or renewing the conduct, contract, conspiracy, or combination alleged herein, or from entering into any other contract, conspiracy, or combination having a similar purpose or effect, and from adopting or following any practice, plan, program, or device having a similar purpose or effect;

F.     Plaintiffs and the members of the Damages Class be awarded restitution, including disgorgement of profits Defendants obtained as a result of their acts of unfair competition and acts of unjust enrichment;

G.     Plaintiffs and the members of the Classes be awarded pre- and post- judgment interest as provided by law, and that such interest be awarded at the highest legal rate from and after the date of service of this Complaint;

H.     Plaintiffs and the members of the Classes recover their costs of suit, including reasonable attorneys' fees, as provided by law; and

I.     Plaintiffs and members of the Classes have such other and further relief as the case may require and the Court may deem just and proper.

## JURY DEMAND

Plaintiffs demand a trial by jury, pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, of all issues so triable.

Dated:  July 9, 2013.                    Respectfully submitted,

/s/Gerard V. Mantese
Jonathan W. Cuneo                        Gerard V. Mantese
Joel Davidow                             (Michigan Bar No. P34424)
Daniel Cohen                             David Hansma
Victoria Romanenko                       (Michigan Bar No. P71056)
Cuneo Gilbert & LaDuca, LLP              Brendan Frey
507 C Street, N.E.                       (Michigan Bar No. P70893)
Washington, DC 20002                     Mantese Honigman Rossman & Williamson,
Telephone: (202) 789-3960                P.C.
jonc@cuneolaw.com                        1361 E. Big Beaver Road
joel@cuneolaw.com                        Troy, Michigan 48083
danielc@cuneolaw.com                     Telephone: (248) 457-9200
vicky@cuneolaw.com                       gmantese@manteselaw.com
                                         dhansma@manteselaw.com
Michael J. Flannery                      bfrey@manteselaw.com
Cuneo Gilbert & LaDuca, LLP
300 North Tucker                         Shawn M. Raiter
Suite 801                                Paul A. Sand
St. Louis, MO  63101                     Larson • King, LLP
Telephone:  (314) 226-1015               2800 Wells Fargo Place
mflannery@cuneolaw.com                   30 East Seventh Street
                                         St. Paul, MN  55101
Don Barrett                              Telephone: (651) 312-6500
David McMullan                           sraiter@larsonking.com
Brian Herrington                         psand@larsonking.com
Barrett Law Group, P.A.
P.O. Box 927                             Thomas P. Thrash
404 Court Square                         Thrash Law Firm, P.A.
Lexington, MS 39095                      1101 Garland Street
Telephone: (662) 834-2488                Little Rock, AR 72201
dbarrett@barrettlawgroup.com             Telephone: (501) 374-1058
bherrington@barrettlawgroup.com          tomthrash@sbcglobal.net
dmcmullan@barrettlawgroup.com
                                         Dewitt Lovelace
Phillip Duncan                           Valerie Nettles
Richard Quintus                          Lovelace & Associates, P.A.
Duncan Firm, P.A.                        Suite 200
900 S. Shackleford, Suite 725            12870 US Hwy 98 West

Little Rock, AR 72211
Telephone:  (501) 228-7600
phillip@duncanfirm.com
richard@duncanfirm.com

Gregory Johnson
G. Johnson Law, PLLC
6688 145th Street West,
Apple Valley, MN 55124
Telephone: (952) 930-2485
greg@gjohnsonlegal.com

Miramar Beach, FL  32550
Telephone: (850) 837-6020
dml@lovelacelaw.com
alex@lovelacelaw.com

Charles Barrett
Charles Barrett, P.C.
6518 Highway 100
Suite 210
Nashville, Tennessee 37205
Telephone: (615) 515-3393
charles@cfbfirm.com

*Attorneys for Dealership Plaintiffs*